W. H. TAYLOR and Mildred Taylor, Appellant,

v.

DALLAS TRANSIT COMPANY, Appellee.

No. 7128.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 13, 1961.

Rehearing Denied Dec. 11, 1961.

Harold B. Berman, Jay S. Fichtner, Jackson, Walker, Winstead, Cantwell & Miller, Melton & James, Dallas, for appellants.

Turner, White, Atwood, Meer & Francis, Dallas, for appellee.

CHAPMAN, Justice.

This is an appeal by plaintiffs below, W. H. Taylor and wife, Mildred Taylor, from a judgment of the trial court based upon a jury verdict in favor of Dallas Transit Company in a personal injury and property damage case growing out of a collision at an intersection in the city of Dallas.

The jury absolved appellee company on all issues of negligence submitted. They found appellant, Mildred Taylor, was guilty of running a red light; failing to keep a proper lookout; failing to make a proper application of the brakes; and driving at an excessive rate of speed. From a take nothing judgment plaintiffs below perfected

their appeal to the Dallas Court of Civil Appeals and the Supreme Court transferred the case to us for determination.

The collision took place at the intersection of Commerce Street and Good-Latimer Expressway in the city of Dallas. It was a red, amber and green light controlled intersection with each party contending the other ran the red light. E. N. Rhodes was operator of appellee's trolly bus which had to follow the overhead lines to keep its power. Mrs. Taylor of Denton was driver of her nine passenger station wagon and carried as passengers eight other lady fellow employees from her city, Lewisville and Lake Dallas. They were on their way to a 7:00 o'clock working hour at National Banner Company, 825 Trunk Ave. in Dallas and the driver had left Denton about 15 minutes before 6:00.

■ The first point of error concerns alleged misconduct of the jury in reading a Dallas Times Herald story of the trial. The story was as follows:

## "9 'PEERS' IN DOUBT?

"Nine women who said they kept silent for five blocks drew disbelieving stares from nine other women to whom they told it in a Dallas trial Wednesday.

"The nine women, appearing in a damage suit, were occupants of a station wagon. Each in turn testified they had gone five blocks and not a word had been spoken prior to a collision between the station wagon and a bus.

"There were nine women on the jury and they looked at each other in strange fashion. The judge (a man) just shook his head and smiled."

■ Though it was improper for a juror to take a newspaper reporter's version of a portion of the testimony into the jury room and show it to the other jurors,

we do not see how there could possibly have been reversible error in the fact that the jury had a laugh at the human interest story written by the reporter. The facts which prompted the facetiously written article took place in the jury room in the presence of the jury. We fail to see any reversible error in the statement that the judge shook his head and smiled. For us to say that such conduct on the part of the judge constituted an overt act of disbelief of the testimony, thus constituting a comment by the judge upon the weight of the evidence, would be to delve into the mysteries of the mind, and would be highly speculative to say the least. It would be even more speculative to say from this record that the jury was influenced by the judge's actions to conclude that the lady witnesses were not worthy of belief. There was an abundance of evidence to justify the jury in disbelieving the lady witnesses and in answering the issues as they did. Additionally, the record is replete with evidence discrediting the testimony of Mrs. Taylor upon material points in the case concerning a prior injury. As in all contested cases, much of the testimony was conflicting, but "it must be borne in mind that it was the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony. It was their province also to resolve the conflicts and inconsistency in the testimony of any one witness as well as in the testimony of different witnesses." Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W. 2d 561–563. They may also disbelieve a witness though he is neither impeached nor contradicted, Cheatham v. Riddle, 12 Tex. 112.

■ It is settled law of this state that the party asserting misconduct of the jury has the burden not only of proving by a preponderance of the evidence that such misconduct occurred, but also of showing that such misconduct probably resulted in injury to him.[1] As a reviewing court we

1. Barrington et al. v. Duncan et al., 140 Tex. 510, 169 S.W.2d 462; Rule 327, Vernon's Ann.Texas Rules of Civil Procedure.

conceive it our duty, in considering the question of injury, to view the matter in the light of the entire record, which means the evidence heard on the motion urging misconduct, the evidence in the main trial, and all other parts of the record which may throw light on the question of the injury.[2] In doing so we are compelled to say that appellants have not discharged the burden required to show injury.

In the next point appellant asserts error of the trial court in refusing to submit to the jury special issues based upon the theory of discovered peril.

They urged the testimony of the trolley-bus driver as the basis of their point, so we may assume that his testimony was the most favorable to their contentions. Question No. "B" in their requested issues on discovered peril inquires of the jury "if the driver *saw* the plaintiff * * * and knew and realized the perilous position of said plaintiff *at a time* when, by the use of the means at hand, having due regard for the safety of himself and his passengers, he, Ellis Nelson Rhodes, could have avoided the collision by the exercise of ordinary care?" With respect to the actual discovery by the bus driver of appellants' perilous position, appellants' brief sets out the three factors which they say constituted this element of discovered peril. Subsection (a) of these three is as follows: "that appellee actually discovered, or *'should have discovered'* appellants' perilous position." (All emphases are ours unless otherwise stated.)

It is readily apparent that this element of the issue requested does not conform with the "(a)" section just quoted as being proper in that the issue requested made inquiry of the jury if the driver *saw* Mrs. Taylor in the perilous position in time to avoid the collision and not if he discovered or *should have discovered* her perilous position.

It is unnecessary for us to discuss which one of the two methods is or is not correct but we are bound by the wording of the issue as requested in passing on whether the tendered discovered peril issues should have been given; viz. if the driver *saw* the plaintiff in time, etc. and not if he *should have seen her* in time.

The bus driver testified Mrs. Taylor was going East in the 3rd lane of the 5 lanes on Commerce Street. Her own testimony was that she was going approximately 20 miles per hour. He stated he was out about half way on Commerce Street[3] "* * * when I looked and saw the station wagon coming through;" that he stopped as soon as he could; that his bus was almost to the north side of Commerce when Mrs. Taylor hit him just back of the center of the 30 to 35-foot long bus; that two east bound cars were parked at the intersection facing the red light; and that she was coming around the two cars and already into the intersection when he saw her. Under questioning by appellant he said:

"Q. Well, what did you do when you saw her; you didn't tell me what you did? A. Well—

"Q. Did you blow your horn? A. Lord, there wasn't nothing you could do. What would you have done? I couldn't do nothing.

"Q. I want to know what you did, Mr. Rhodes, not what I would have done. A. I didn't do anything, just pray the Lord that maybe we all wouldn't be killed, that is all I could do.

"Q. You didn't try to stop? A. Why sure, I tried to stop and did.

"Q. You stopped only after she hit you, is that right? A. Yes, that is right.

"Q. Did you try to speed up? A. No, I stopped.

---

2. Barrington et al v. Duncan et al., supra.

3. Commerce Street, was judged by him to be 45 feet wide.

"Q. Did you try to turn to your right to get out of the way? A. No, I didn't try to get out of the street, I was so far down, I couldn't no way.

"Q. Did you try to move over into another lane? A. No, I didn't have time to do all that.

"Q. So it is your testimony that after you saw her the first time, you didn't have time to do anything, is that correct? A. No, I didn't.

"Q. And the first time that you saw her you say she— A. She was right there, she come around these cars and come through.

"Q. She was already in the intersection, is that right? A. Yes, she come around and got around them and I saw something was going to happen, and the only thing I knew to do was to stop if I could and just pray the Lord that maybe she wouldn't be killed, or maybe I wouldn't, and I am thankful we wasn't.

"Q. So, she was, at the time you saw her, already past these cars that you have identified over here? A. No, she was just coming by them.

"Q. Just coming by them? A. Just —I saw her just—the other cars were sitting still, and she started by them, and I saw her."

From this testimony, and considering all other testimony and inferences that may be fairly drawn from the record, we find no probative evidence to show what, if anything, the bus driver, in the exercise of ordinary care, could have done with safety to himself and his passengers, while acting in the brief lapse of time transpiring after his discovery of the emergency, by which he could have avoided the disaster. Texas Pacific Coal & Oil Co. et al. v. Wells et al., Tex.Civ.App., 151 S.W.2d 927, affirmed, Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660; Cantu v.

South Texas Transp. Co., Tex.Civ.App., 110 S.W.2d 995; Schumacher et al. v. Missouri Pacific Transp. Co., Tex.Civ.App., 116 S.W. 2d 1136; Parks v. Airline Motor Coaches, Inc., 145 Tex. 44, 193 S.W.2d 967, 969. In the last cited case the Supreme Court said:

"[1–4] The rule for allowing recovery of damages under the doctrine of discovered peril is exacting. The issues arising from primary negligence and contributory negligence become immaterial in passing on the issue of liability under this rule. The basis for recovery rests upon humane principles and public policy, and not upon the negligence or dereliction of the injured person. The sole question for determination is whether there is evidence that the driver of the bus actually discovered the perilous position of the deceased in time to have avoided striking him, by the use of all the means at his command, consistent with the safety of himself, his bus, and his passengers. The burden was upon the plaintiff to establish this fact. That the driver was guilty of violating those humane principles will neither be imputed nor presumed, but such guilt must be proved by competent evidence. In order to sustain a recovery, it must be shown that the driver actually discovered deceased and realized his perilous position in time to have averted the injury."

We believe there are other good reasons there is no reversible error shown from the record in failing to give the tendered discovered peril issues but we see no good purpose in extending this opinion further to discuss them in view of the fact that it is so obvious the testimony, when considered most favorably to appellants, does not raise discovered peril.

■ The next point urged as reversible error is that appellee's counsel repeatedly made demands before the jury that appellants' counsel give him privileged ma-

terial from his file, and that he placed him on the witness stand to question him regarding the privileged written statement.

Mrs. Taylor testified that the bus driver admitted at the scene of the collision that he had run a red light and denied making a written statement herself that the bus driver, at the scene of the collision, had accused her of running a red light.

There was considerable bantering between opposing counsel before the jury with respect to the statement after Mrs. Taylor testified she had made no such statement. The record shows appellants' counsel admitted he had handed the statement to Mr. Hauer, counsel for appellee, to read and that he read it. He also testified he had no objections to appellee's counsel asking him questions concerning the statement and stated in the presence of the jury that he would "swap" the statement to appellee's counsel for a report made by the bus driver. Then later in the trial appellee's counsel testified to the contents of the statement, to the effect that the bus driver did accuse Mrs. Taylor, at the scene of the collision, of running a red light.

No point is brought forth complaining of error of the court in permitting Mr. Hauer to testify to the contents of the statement but they only urge alleged error in allowing appellee's counsel to repeatedly demand the statement in the presence of the jury. The record shows that at one time Mr. Fichtner, one of the counsel for appellant, offered to "swap" the written statement of Mrs. Taylor to counsel for appellee for the report the bus driver made of the accident. That report was later offered but never admitted into evidence.

In this point it appears to us there is "much ado about nothing." Since the testimony of the contents of Mrs. Taylor's statement is in evidence without appellate complaint we fail to see how there could possibly be any harm shown to appellants in the repeated demand for it before the jury. Under the harmless error doctrine of Rule 434 we would have to say that

even if there was error in the repeated demands, there were no such denials of appellants' rights as were calculated to cause and which probably did cause the rendition of an improper judgment.

Points 4 through 10 complain of the court's refusal to give numerous requested issues on primary negligence.

The discovered peril issues tendered having been properly refused, refusal to submit further special issues upon primary negligence, even if proper issues under the evidence and the pleadings, was harmless in view of the fact that the jury found appellant guilty of contributory negligence. Wortham et al. v. Bull, Tex.Civ.App., 19 S.W.2d 211 (writ refused); Reeves v. Southwest Flying Service, Inc., Tex.Civ.App., 258 S.W.2d 848. Under this record it is obvious that even if all the primary negligence issues refused had been given and answered against appellee it still could not have changed the result in view of the issues of contributory negligence answered against appellants. Accordingly, the judgment of the trial court is affirmed.