F. E. HOLLOMAN, d/b/a F. E. Holloman Excavating Company, et al., Appellants,

v.

CITY OF GEORGETOWN, Texas, Appellee.

No. 12238.

Court of Civil Appeals of Texas, Austin.

July 30, 1975.

Rehearing Denied Sept. 10, 1975.

Tom Joseph, San Antonio, for appellants.

Douglass D. Hearne, Stayton, Maloney, Hearne & Babb, Austin, for appellee.

SHANNON, Justice.

This is an appeal from the judgment entered by the district court of Williamson County in favor of appellee, the City of Georgetown, Texas, for $69,526.23. Appellants are F. E. Holloman, doing business as F. E. Holloman Excavating Company and Millers Mutual Fire Insurance Company of Texas. We will affirm the judgment of the district court.

In his trial petition Holloman alleged that the City advertised for sealed bids for certain sanitary sewer improvements to be constructed in Georgetown. He submitted a written bid to do the work and furnish the materials for $137,174.75. The City accepted the bid and Holloman entered upon the construction of the improvements. The contract was to be completed in April of 1972.

Holloman pleaded that after the job was underway he discovered that the City's plans and specifications were incorrect with respect to the quantities of rock required to be excavated. Those plans and specifications stated that the amount of rock to be excavated was 1200 cubic yards whereas, according to Holloman, the amount to be excavated exceeded 3900 cubic yards.

In addition to the greater quantity of rock, Holloman stated that he encountered large amounts of underground water. By reason of the difficulty in excavating the rock and in removing the water, the excavation was "slow and exceedingly expensive." Holloman requested and received permission of the City to extend the time for completion of the contract until November 26, 1972. Holloman pleaded additionally that he notified the City that he would need even a longer period of time than November 26. He claimed that in October

or November of 1972, he notified the City that a renegotiation should be had upon the bid price for rock excavation over the amount of 1500 cubic yards upon the basis of $35.00 per cubic yard.

Holloman averred further that the City's agent wrote the City recommending that on November 26, the City declare the project abandoned, that the City take over Holloman's equipment, and that Holloman not be paid on his monthly estimate number six. Holloman pleaded that on November 17, he learned that the contract had been terminated at the city council meeting on the preceding evening. On November 20, 1972, Holloman handed to appellee's city manager his proposal to renegotiate the excavation of the rock. According to Holloman, the city manager advised him that the city council had voted to terminate the contract and to pay him the balance due him.

Acting upon such information, Holloman claimed that he proceeded to remove the workmen from the project and most of his equipment.

Holloman alleged that the City breached the contract, and prayed for compensatory damages in the sum of $88,150.16, for exemplary damages in the sum of $50,000.00, and for attorney's fees in the sum of $10,000.00.

The City answered and filed a cross-action. The City pleaded that the contract "was repudiated and breached" by Holloman on November 20, 1972, when he refused to prosecute the job further unless the City agreed to renegotiate the contract. The terms of the contract, the City claimed, were clear and unambiguous, and did not require it to agree to any renegotiation because of any inaccuracies in the estimate submitted in its proposal.

In its cross-action the City pleaded the contract, under the terms of which Holloman was required to complete the work in April of 1972. Despite several extensions of time granted by the City, by November 20, 1972, the City was notified by its engineer that judging by the rate of past progress that it would take about 814 more

calendar days for Holloman to complete the job and advised the City that no more extensions of time should be granted. Also on November 20, 1972, the City was informed that Holloman would continue on the job only if the rates for the excavation of the rock were renegotiated.

The City pleaded that "faced with Holloman's ultimatum," it notified Holloman that the contract was declared breached. Thereafter the City entered into a contract with Roy Krienke for the completion of the job. Krienke immediately began work on the project which was finished in December, 1973.

The City pleaded finally that it had suffered damages in the amount of $69,524.61, which sum was the difference between the total construction cost less the cost of the project had Holloman performed under the contract, increased by the "reasonably foreseeable" consequential damages. The City also sought recovery of $10,000.00 as reasonable attorney's fees.

The case was submitted to the jury by sixteen special issues. In answering those issues the jury *failed to find* (1) that the City terminated the contract as of November 26, 1972; (2) that the City had wrongfully withheld certain of Holloman's equipment; and (3) that the City had willfully made a claim against Holloman's bonding company. The jury answered affirmatively (1) that Holloman abandoned the contract with the City; (2) that he failed to provide sufficient workmen and equipment to complete the work called for under the contract by November 26, 1972; and, (3) that there were defects in the lines and the "lift station" which had been installed by Holloman.

With respect to the damages issues, the jury answered that the remaining balance due Holloman by the City for labor performed and materials furnished to November 20, 1972, was $3,718.54. The amount that Holloman would have earned under the contract, had he completed it was $161,226.35, and the amount which the City was reasonably required to spend in completing

the contract, excluding those amounts expended for the reasonable and necessary inspection and repairs of the materials and equipment installed by Holloman was $136,376.60. The jury answered further that the amount the City was reasonably required to spend in inspecting and repairing the defects in the lines and lift station was $15,496.58. The jury answered, in addition, that the City had incurred the total sum of $22,918.21 for additional engineering costs, interest, and attorney's fees "to make good" the failure of Holloman to perform the contract.

Based upon the jury's verdict, judgment was entered for the City for $58,946.23. The judgment recited that sum represented the City's cost of completing the contract over and above the cost to the City had Holloman performed, including additional interest and engineering expenses, less the amount of offsets to Holloman as determined by the jury.

Holloman complains of the judgment by fifteen points of error. No effort will be made to discuss those points of error in the order of their appearance in the briefs.

Holloman's claimed right of renegotiation was grounded upon General Provision 5.02 of the Specifications. That provision reads as follows:

"*Changes and Increased or Decreased Quantities of Work*:

"The Owner shall have the right to make such changes and alterations in the Plans or in the quantities of work as he may consider necessary or desirable, and such changes and alterations shall not be considered as a waiver of any condition of the Contract, nor shall they invalidate any provision thereof. The Contractor shall perform the work as increased or decreased, and no allowance will be made for anticipated profits.

"Payment to the Contractor will be made for the actual quantities of work done and materials furnished at the unit prices set forth in the Contract, except as follows:

"When the total cost of work to be done or of materials to be furnished is more than one hundred and twenty-five per cent (125%) of the total Contract Price stated in the proposal.

"When the total cost of work to be done or of materials to be furnished is less than seventy-five per cent (75%) of the total Contract Price stated in the proposal, then either party to the Contract, upon demand, shall be entitled to a revised consideration on the work actually done.

"Revised consideration shall be determined by supplemental agreement between the parties which supplemental agreement shall be included with and shall become a part of the Contract."

The City maintained that General Provision 5.02 was "voided and replaced" by the following Special Provision:

"*Increased or Decreased Quantities of Work*:

Paragraph GP5.02, Section 5, Part II, General Provisions is hereby voided and replaced with the following:

"The owner shall have the right to make such changes and alterations in the plans or in the quantities of work as he may consider necessary or desirable, and such changes and alterations shall not be considered as a waiver of any condition of the contract, nor shall they invalidate any provision thereof. The contractor shall perform the work as increased or decreased, and no allowance will be made for anticipated profits."

After the close of the evidence the court ruled, as a matter of law, that the above quoted Special Provision superseded General Provision 5.02. That ruling is the genesis of several of Holloman's points of error. Holloman says that the existence of the General Provision and the Special Provision in the contract rendered the contract ". . . ambiguous as a matter of law and should have been submitted to the jury for fact finding." Holloman says further

that it follows that the court in refusing to submit his requested special issue number two, inquiring whether Holloman ". . under the terms of the Sanitary Sewer Contract, was entitled to a renegotiation of Item 16, 'Rock Excavation' ". Finally, in this connection, Holloman claims that the ruling of the court amounted to an enforcement of "an illegal contract" against him.

■ To read General Provision 5.02 and the above quoted Special Provision is to conclude that the contract was not ambiguous. The Special Provision plainly states that it "replaces" the indicated part of General Provision 5.02. Because the contract was not ambiguous, it follows that the court did not err in refusing to submit requested special issue number two.

■ The contract is "illegal," says Holloman, because the quoted Special Provision is contrary to Tex.Rev.Civ.Stat.Ann. Art. 2368a. Holloman makes no reference to an assignment of such an error in the amended motion for new trial. A reading of the amended motion for new trial shows no assignment of error that the contract was in violation of Art. 2368a. As the error was not preserved in the amended motion for new trial, it was waived and will not be considered. Tex.R.Civ.P. 320, 324, and 374. *St. Louis Southwestern Railway Company v. Gregory,* 387 S.W.2d 27 (Tex.1965).

By further point of error Holloman claims that the court erred in excluding from evidence that part of the contract which pertained to federal participation in the project. Holloman says that the court's exclusion of that portion of the contract and "evidence pertaining thereto" served to eliminate the necessity for the City to fully prove its damages. In this connection Holloman takes the position that he had the right to fully develop before the jury that the United States government paid for a portion of the construction project, and to show that the government did not require repayment by the City.

■ The district court did not err in excluding the evidence of federal participation in the project. That evidence was immaterial and irrelevant since a contractor who breaches a federally funded contract is not insulated from liability for damages to the owner to the extent of federal participation. The possibility of a windfall to the owner is a matter solely between the owner and the United States government and is of no concern of the breaching contractor.

In his point of error five Holloman claims that the court erred in refusing to submit to the jury his requested special issue number one. That special issue read: "Do you find from a preponderance of the evidence that F. E. Holloman, in reliance that his contract had been terminated by the City of Georgetown, began moving his equipment from the job site on November 20, 1972?"

■ Appellant had the burden of drafting the requested special issue in substantially correct form. *Jones v. Rainey,* 168 S.W.2d 507 (Tex.Civ.App.1942, writ ref'd). Tex.R.Civ.P. 279, Hodges, *Special Issue Submission in Texas.* Holloman's requested special issue was not in "substantially correct" form because it assumed a controverted fact, that being that the contract was terminated by the City. *Texas State Optical v. Caylor,* 387 S.W.2d 461 (Tex.Civ.App.1965, writ ref'd n. r. e.). As previously stated, that controverted fact *was* submitted in special issue number one, and was found not to exist.

In points six and eight, Holloman complains that the answers of the jury to special issues one and eight are "so contrary to the overwhelming weight and preponderance of the evidence as to be clearly erroneous." As will be remembered, in response to special issue number one, the jury failed to find that the City had terminated the contract on November 16, 1972, and in response to special issue number eight the jury answered affirmatively that Holloman abandoned the contract with the City.

It was Holloman's position that the City terminated the contract, and that the ter-

mination was accomplished during the evening of November 16, at the regular meeting of the council. Holloman called Andy Welch, a news director of a radio station in Georgetown who was present at the council meeting. From Welch's testimony the jury could have concluded that the council voted to terminate the contract or at least it voted to advise the City Attorney to begin whatever steps were necessary to get rid of Holloman and the contract. Holloman testified that he visited with the city manager on November 20, and asked him if the contract had been terminated. Holloman testified, at least one time, that the city manager told him that the contract had been terminated as of November 26. Holloman also claimed that he was told by the city manager that he could remove his equipment and that the council had voted to pay him. The city manager replied that, though he vaguely recalled Holloman's visit, he could not recall any discussion about termination of the contract.

The City claimed that the facts were that the council did not terminate the contract on November 16, but instead asserted their intention to require Holloman to finish the called-for work by November 26. The council chose not to grant Holloman any more extensions of time to complete the contract. The minutes of the council meeting show that the council intended to hold Holloman and the bonding company to their responsibilities under the contract. The City did nothing, however, that would have prevented Holloman from continuing the work until November 26.

All work on the project stopped by November 20, six days before the date of the scheduled completion. Holloman gave notice to the City that he intended to remove his equipment from the project and he ceased operations.

Holloman took a position inconsistent with the contract as early as November 13, when he told the city manager and two engineers that he could not continue on the job unless the price for excavation of rock was renegotiated. That thought was con-

tained in a letter written by Holloman and dated November 20, which the City regarded as tantamount to an "ultimatum" that Holloman was willing to proceed with the project only if there was a renegotiation.

■ We have examined the evidence and have concluded that the answers of the jury to special issues one and eight are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

■ Point of error number nine which reads, "The trial court erred in submitting special issue no. 9" is not in compliance with Tex.R.Civ.P. 418 inasmuch as it does not direct the attention of the court to any particular error relied upon. *Missouri-Kansas-Texas Railroad Co. v. McFerrin*, 156 Tex. 69, 291 S.W.2d 931 (1956).

We, nevertheless, have read the argument under point of error number nine and have found the basis for the point to be that there were no pleadings to support its submission. Special issue number nine inquired whether Holloman failed to provide sufficient workmen and equipment in order to perform and complete the work called for under the contract. General Provision 8.10 of the contract is concerned with "Abandonment of Work or Default of Contract." On ground for abandonment given in General Provision 8.10 is the failure on the part of the contractor "to perform the work with sufficient workmen and equipment."

In response to special issue number eight the jury answered that Holloman abandoned his contract. The jury's answer to special issue number eight is sufficient basis for the judgment without regard to special issue number nine.

With respect to Holloman's complaint that there was no pleading to support the submission of special issue number nine, we have examined the City's trial pleading. In its cross-action, the City pleads the contract

and, in effect, makes the contract a part of its pleading "for all purposes."

■ Holloman's tenth point of error is that the jury's answer to special issue number eleven concerning the amount of money reasonably incurred by the City in completing the contract is "so contrary to the overwhelming weight and preponderance of the evidence as to be clearly erroneous." Under that point Holloman says that the substitute contractor, Krienke, was paid for work already done by Holloman and that Krienke "inflated" charges to the City which were neither reasonable nor authorized under the contract. We have examined the statement of facts and have concluded that the answer of the jury to special issue number eleven is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

■ In points of error number eleven and thirteen Holloman complains that, as a matter of law, interest and attorneys' fees are not proper elements of recovery in cases of this character. Holloman has waived any error in this connection in that the amended motion for new trial contains no such assignment of error. The only assignment of error in the amended motion for new trial complains of the *insufficiency of the evidence* of the jury's answers respecting interest and attorneys' fees.

We have discussed those points of error which we view as controlling. We have considered those remaining, and find them to be without merit. The judgment is affirmed.