Robert L. DURKIN, Appellant,

v.

AMERICAN GENERAL FIRE & CASU-ALTY COMPANY, Appellee.

No. 12–81–0077–CV.

Court of Appeals of Texas, Tyler.

April 14, 1983.

Rehearing Denied May 12, 1983.

**42**

J. Woodfin Jones, William Fred Hagans, Michael A. Caddell, Bracewell & Patterson, Houston, for appellant.

Dan S. Boyd, Johnson, Swanson & Barbee, Dallas, Vernon L. Harrison, Houston, for appellee.

COLLEY, Justice.

Robert L. Durkin (Durkin), defendant below, appeals from a money judgment rendered against him in favor of American General Fire & Casualty Company (AGF & C), plaintiff below, which judgment is based on a jury verdict and stipulations of the parties.

AGF & C brought suit against Durkin and James M. Cazanas (Cazanas) on a general indemnity agreement dated August 5, 1976, signed by Cazanas as Trustee; the Rittenhouse Investors, a partnership; by Durkin acting by and through James M. Cazanas as attorney in fact as a partner; and James M. Cazanas Partner (plaintiff's Exhibit No. 9). This agreement indemnifies AGF & C as surety for any loss, costs, expenses, sums paid, and attorney's fees incurred by it as a consequence of the payment by said surety under certain release of lien bonds in favor of creditors of the principals to secure a release of mechanic's and materialman's liens filed against the old Rice Hotel and garage buildings in Houston, Texas, by various contractors, workmen and architects. No real dispute exists about the contents and construction or effect of the indemnity agreement, or that payment was made by AGF & C to the contractors and architects hereinafter mentioned under the bonds for the benefit of the owners of the Rice Hotel building. The jury found in response to four special issues submitted: (1) that Durkin and Cazanas were general partners on August 5, 1976, in a partnership engaged in the business of investing in, buying and selling the Rice Hotel; (2) that Cazanas, who signed the indemnity agreement as "Trustee", was acting for the partnership; (3) that Cazanas was authorized to sign the indemnity agreement as trustee for the partnership; and (4) that Durkin, by executing plaintiff's Exhibit No. 11 (later discussed), "intended to ratify" the act of Cazanas in signing the indemnity agreement as trustee for the partnership.

On September 29, 1975, Durkin and Cazanas signed an agreement of general partnership, agreeing to a fifty/fifty partnership under the name "The Rittenhouse Investors." Such agreement recites the business of the partnership was to invest in, buy and sell real estate and other related business as may be agreed upon by the partners. The agreement provided that the

partners should share the profits and losses of the business equally, and contained other provisions not pertinent to the determination of this appeal.

The undisputed facts show that Cazanas, acting as "trustee", entered into a contract of sale with Rice University for the purchase or lease of the Rice Hotel building, furniture, fixtures and equipment located therein, and that a lease or purchase of such properties was made by Cazanas acting as trustee on or about January 14, 1976. The record is not entirely clear as to whether the property was purchased or leased by Cazanas. The record does demonstrate that Cazanas as trustee entered into contracts for the renovation and improvement or remodeling of the Rice Hotel building and thereafter failed to pay at least two contractors who were doing a part of the work, namely Winchell Painting Company and Winchell & Sons Construction Company, and failed also to pay the fee of McGinty Partnership Architects. Subsequently, the creditors filed mechanic's and materialman's liens against the properties to secure payment of their fees and the amounts due under the contracts by "Cazanas, Trustee." Thereafter, release of lien bonds were purchased by Cazanas, as trustee, from AGF & C in favor of such creditors to procure the release of the mechanic's and materialman's liens filed against the properties. Cazanas, as trustee, failed to pay the creditors and AGF & C, surety on the release of lien bonds, settled with the creditors, paying $50,000.00 to Winchell Companies and $18,-706.36 to McGinty Partnership Architects. This suit was filed against Durkin and Cazanas by AGF & C to recoup its payment to the creditors on the release of lien bonds, as well as to recover their expenses and legal fees incurred, all as is provided by the general indemnity agreement. These facts are established by written documents introduced into evidence and by the written agreements of the parties, particularly plaintiff's Exhibit No. 11, as well as stipulations made by the parties at trial.

On February 11, 1976, Durkin and Cazanas signed an "agreement," dated January 14, 1976 (plaintiff's Exhibit No. 11), which reads in part as follows:

WHEREAS, although Cazanas alone executed the Rice Hotel Closing Documents and will execute future financing documents for remodeling and improvements to be made to the Hotel, and will execute tenant leases and other contracts relating to the Hotel and Garage, Cazanas and Durkin as between themselves are desirous of holding the above described documents and operating the Rice Hotel and the Rice Hotel Garage as 50% partners under their general partnership, Rittenhouse Investors, and are desirous of further defining their mutual obligations as set forth hereinbelow,

NOW, THEREFORE, for the mutual considerations and covenants herein contained, Cazanas and Durkin hereby contract and agree as follows:

(1) Cazanas acknowledges that he executed the Rice Hotel Closing Documents, and has or will execute all other documents, including financing for improvements to the Rice Hotel, for the benefit of Rittenhouse Investors, a Texas General Partnership, and Durkin hereby recognizes and agrees that to the extent that there is any personal liability provided in any of the Rice Hotel Closing Documents, that Durkin shall be severally responsible for fifty percent (50%) of same.

█ Durkin raises fourteen points of error. Points 1 and 2 allege that the evidence is legally and factually insufficient to support the jury's answer to Special Issue No. 3. Special Issue No. 3 reads as follows:

Do you find from a preponderance of the evidence that James M. Cazanas was authorized to sign Plaintiff's Exhibit 9 as Trustee for the partnership?

The evidence above discussed establishes the existence of a general partnership composed of Durkin and Cazanas on August 5, 1976, whose business purposes were: "... to invest in, buy and sell real estate and such other related business as may be agreed upon by the partners." Article I, ¶ 1.2, Partnership Agreement (plaintiff's Exhibit No. 10). Such was the unchal-

lenged finding of the jury in response to Special Issue No. 1. Plaintiff's Exhibit No. 11, quoted in part above, evidences the agreement of Durkin that, though the closing "documents" for purchase of the Rice Hotel building were taken in the name of Cazanas as "trustee," nevertheless such properties are in fact partnership properties of The Rittenhouse Investors. Such agreement also clearly contemplates that Cazanas will "... execute future financing documents for remodeling and improvements to be made to the hotel...." Among the "closing documents" were to be "various other assumption and indemnity agreements." Durkin testified at trial that he "flatly refused" to sign the indemnity agreement when asked by Cazanas to do so and that he did not authorize Cazanas, his co-partner, to sign the same for him. The jury rejected his trial testimony, and answered Special Issue No. 3 that Cazanas was authorized to sign the agreement as trustee for the partnership. First, considering only the evidence introduced at trial favorable to such finding, we conclude that the evidence is legally sufficient to support the jury's answer to Special Issue No. 3. Then, considering all the evidence in the case, we conclude that it is ample and sufficient to support the jury's answer to Special Issue No. 3. Points 1 and 2 are overruled.

■ Next, by point 3, Durkin argues that the form of Special Issue No. 3 is improper because it failed to ask the jury if *Durkin* authorized Cazanas to sign the indemnity agreement. The substance of Durkin's argument is that because of the form of such submission on the question of authority, the jury was misled and was able to answer "we do" if they found that some person other than Durkin authorized the execution by Cazanas of such agreement, therefore, Durkin argues the answer of the jury fails to find that *Durkin* authorized the signing of such document contrary to the requirements of Section 9(2) of Article 6132b, Texas Uniform Partnership Act. (Hereafter referred to as "TUPA".) That section of TUPA provides that "an act of a partner, which is not apparently for the carrying on of the business of the partnership in the

usual way, does not bind the partnership unless authorized by the other partners." AGF & C counters that since Durkin was the only other partner in the partnership, that such finding clearly constitutes a finding as a necessary implication that Durkin authorized Cazanas to sign the agreement. Admittedly, the issue properly should have inquired whether Durkin as the "other partner" authorized Cazanas to sign the indemnity agreement. An objection was leveled at the proposed issue on such ground, thus the trial court erred in overruling the objection of Durkin to the form of the issue; however, we believe the error to be harmless. The issue as submitted could be construed as inquiring of the jury if any one, not necessarily Durkin, authorized Cazanas to sign the document inquired about in the issue. The question, in determining whether or not the error was harmless or prejudicial is, "Is there is a reasonable probability that the jury in answering the issue might have concluded that some person *other* than Durkin authorized Cazanas to sign?" *General Crude Oil v. Aiken,* 162 Tex. 104, 344 S.W.2d 668 (1961). The evidence shows without dispute that the partnership consisted of two members, Durkin and Cazanas. No evidence was presented to the jury showing or tending to show that any other person purportedly authorized Cazanas to sign the indemnity agreement. The documentary evidence bearing on the issue was plaintiff's Exhibit No. 11, which has been earlier discussed and quoted. This document had no signatories other than Durkin and Cazanas. At trial Durkin denied he authorized Cazanas to sign for him. The issue was clearly drawn. Under this record we are unwilling to conclude that reasonable jurors were misled by the issue as submitted. The error was harmless. Rule 434, Tex.R.Civ.P.; *General Crude Oil Co. v. Aiken, supra.* Durkin's point of error 3 is overruled.

Our discussion and ruling on Point No. 3 applies as well to defendant's Point of Error No. 4 which complained that the trial court erred in rendering judgment for AGF & C because of its failure to obtain a find-

ing that Cazanas was authorized by Durkin to sign the indemnity agreement for the partnership. Point 4 is overruled without further discussion.

Durkin's points 5 and 6, though employing different language, essentially complain of the same matters as points of error 1 and 2 and are overruled without further discussion.

 Points of error 7, 8 and 9 complain of the failure of AGF & C to produce evidence, and obtain findings, that in signing the indemnity agreement Cazanas ". . . was apparently carrying on in the usual way" of the business of Rittenhouse Investors. Durkin points out that TUPA governs liability of the partnership for acts of a partner incurring a debt or obligation by the provisions of Subdivisions (1) and (2) of Section 9 in two situations: (a) a partnership is bound by act of a partner "apparently carrying on in the usual way the business of the partnership;" and (b) a partnership is not bound by "an act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way . . . unless authorized by the other partners." Durkin is correct when he argues, "plaintiff has the burden of proof on those issues and the burden of obtaining an affirmative finding on at least one of them." *Burns v. Gonzalez*, 439 S.W.2d 128 (Tex.Civ. App.—San Antonio 1969, writ ref'd n.r.e.). And it is true, as pointed out by Durkin, that AGF & C failed to obtain a jury finding that the act of Cazanas in signing the indemnity agreement was ". . . for apparently carrying on in the usual way the business of the partnership." In its brief AGF & C has requested the court to take judicial notice of Articles 5452, et seq., V.A. C.S., relating to mechanic's and materialman's liens, and argues that with such notice the record establishes conclusively as a matter of law that the act of Cazanas in signing the general indemnity agreement was in fact an act for apparently carrying on the business of Rittenhouse Investors in the usual way, within the meaning and purpose of Section 9(1), TUPA. We grant the request and judicially note the provi-

sions of the statutes mentioned, and we agree and so hold. In this case Durkin unequivocally reaffirmed the existence of the partnership (plaintiff's Exhibit No. 11) and acknowledged and agreed that Cazanas had in fact executed closing documents for the purchase of the Rice Hotel in his name as trustee, and would in the future arrange for financing for remodeling and improvement to be made on the hotel, presumably in his name as trustee. That is a fair interpretation of the instrument. The record shows that Cazanas did just what was authorized and expected by Durkin. It is also clear that the partnership failed to pay certain contractors and the architect, McGinty Partnership, as shown above. AGF & C executed the bonds and, after the partnership failed to pay the contractors and architects, AGF & C paid the claims. Thus, instead of owing the Winchell Companies and McGinty Architects, the partnership became indebted to AGF & C by virtue of its payment to such creditors under the bonds issued by AGF & C as surety and as provided by the general indemnity agreement. The act of Cazanas in executing of the indemnity agreement was necessary in order to procure the issuance of the release of lien bonds by AGF & C, which bonds when issued protected the partnership property from judicial foreclosure of the mechanic's and materialman's liens held by the creditors named above. The business purposes of the partnership were directly served because the real estate which it had purchased and was improving for the purpose of resale or lease was thus protected from judicial foreclosure and threat of imminent loss by the partnership. The act of Cazanas, in signing the indemnity agreement, was reasonably necessary under the facts in this case to preserve and protect such properties, and we hold that as a matter of law, it was an act apparently carrying on the business of the partnership in the usual way. Plaintiff's points 7, 8 and 9 are overruled.

Moreover, if we should be wrong in our decision on points 7, 8 and 9, the failure of AGF & C to obtain jury findings in accordance with the claim of Durkin in his points

7, 8 and 9 is of no consequence since the judgment can be supported by the jury's findings in answers in response to Special Issues 1, 2 and 3. In that event we disregard such points of error as immaterial. *Taylor v. Dallas Transit Company,* 351 S.W.2d 554, 555 (Tex.Civ.App.—Amarillo 1961, writ ref'd n.r.e.).

Durkin's points 10, 11 and 12 complain that the trial court erred in submitting Special Issue No. 4 in that the evidence was legally and factually insufficient to support the jury's answers thereto. AGF & C agrees with Durkin on these points and the points are sustained. We disregard such points however since the finding was immaterial. *Taylor v. Dallas Transit, supra.*

■ By his points 13 and 14 Durkin contends that the trial court erred in awarding attorney's fees to AGF & C because no finding was obtained from the jury that such fees paid by AGF & C were reasonable and necessary. Neither party requested issues, nor were any issues submitted, on the question of attorney's fees. Durkin contends that no evidence was introduced on the reasonableness of the attorney's fees and therefore they are not recoverable. AGF & C contends that Paragraph 2 of the indemnity agreement authorizes the award of the actual attorney's fees paid by AGF & C to its attorneys in the total amount of $19,416.14 unless Durkin obtained a finding based on sufficient evidence that the fees paid were unreasonable. Such paragraph reads as follows:

2. The Indemnitors will indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

AGF & C cites in support of this position *F.R. Hernandez Construction & Supply Co. v. National Bank of Commerce of Brownsville,* 578 S.W.2d 675 (Tex.1979). Although we do find that there was testimony as to the reasonableness of the attorney's fees by S.W. Marvin, Jr., a witness for AGF & C (statement of facts, pages 56–62), we agree that *Hernandez* controls here and that AGF & C was not required to prove the reasonableness of the fees actually paid their attorneys because of the contractual provisions of the indemnity agreement. Since it is undisputed, and established conclusively by the evidence, that attorney's fees, including certain litigation costs, were paid by AGF & C to its attorneys in the total sum of $19,416.14, and Durkin failed to plead, prove and obtain a finding from the jury that such fees so incurred and paid were unreasonable under the circumstances, there was no error in allowing such attorney's fees. Durkin's points 13 and 14 are overruled.

Judgment of the trial court is in all things affirmed.