John A. HILSHER, Larry A. Green and
James H. Lyons, Appellants,

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., Appellee.

No. C14–85–711–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 4, 1986.

John K. Grubb, Houston, for appellants.

J. Eugene Clements, James L. Cornell, Houston, for appellee.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

John A. Hilsher, Larry A. Green and James H. Lyons (appellants) appeal from a judgment in favor of Merrill Lynch (appellee). Merrill Lynch filed suit to recover the deficits arising from appellants' commodity futures trading accounts. The case was tried to a jury which found in favor of appellee on most issues. Appellants bring fifteen points of error. We affirm.

Appellant Hilsher entered into a contract with Merrill Lynch in June of 1980. This contract resulted in the establishment of a commodity futures trading account in Hilsher's name. In November of 1980, Hilsher and his sons-in-law, Larry A. Green and James H. Lyons, entered into a contract with Merrill Lynch which resulted in the establishment of a joint commodity futures trading account. Hilsher controlled both accounts. Pursuant to these contracts appellants agreed to pay for any losses which occurred in their commodity trading accounts, interest on any such deficits, and expenses of collection.

After initial success appellants began to lose money in their trading activities. According to Merrill Lynch such losses were due to the unorthodox strategy of Hilsher regarding investment in commodity futures. Hilsher's strategy was to keep his position when the market declined instead of selling out. He preferred to wait for market rebounds hoping to outlast the downturns. While Hilsher's strategy was initially successful, the market eventually turned against him and he began to sustain large losses in both accounts. As the losses mounted, Merrill Lynch sent appellants numerous commodity margin call reminders which requested appellants to reduce their deficits. Appellants' failure to meet their margin calls finally caused Merrill Lynch to liquidate their accounts. After liquidation of the accounts, Merrill Lynch filed suit against appellants to recover the losses.

At trial forty-two special issues were submitted to the jury, thirty-three of which were answered by them. At the conclusion of the trial, Merrill Lynch moved the court to disregard the jury's answers to Special Issues No. 20 and No. 21, which were answered favorably to appellants, and to enter final judgment. The trial court granted Merrill Lynch's motion and signed an order disregarding Special Issues 20 and 21 and signed the final judgment.

Appellants bring fifteen points of error, thirteen of which complain of the trial court's failure to submit special issues requested by appellants.

In points of error one and two appellants complain of the trial court's granting Merrill Lynch's Motion to Disregard Special Issues 20 and 21. In Special Issue 21 the jury found that the contract made the basis of Merrill Lynch's claim was illegal under federal law, and in Special Issue 20 the jury found that this same contract was illegal under Texas law.

In Special Issue 21 the jury found that it was *not* the bona fide intention of the parties to the futures contracts that the commodities were to be delivered, but were to be settled according to or upon the basis of the public market quotations or prices made on any board of trade, without any actual bona fide execution and the carrying out of such contract upon the floor of such exchange. In Special Issue 20, the jury found that it was contemplated by the parties to the futures contracts that there would not be an actual delivery of the commodities sold or bought. In support of their motion to disregard Special Issues 20 and 21, Merrill Lynch argues that federal law has preempted this area and there is no private right or cause of action. Additionally, they argue that there was no evidence adduced at trial to support these findings.

In support of Special Issue 21, appellants argue that Merrill Lynch violated several sections of the Commodity Exchange Act. Appellants allege that Merrill Lynch violated the Act by failing to trade commodity futures contracts on the floor of a commodity exchange. They argue that Merrill Lynch was faking sales by quoting to its customers a price for commodity futures; that if the price of the commodity went up, then the customer made money; and if the price of the commodity went down, then the customer owed Merrill Lynch. They argue further that Merrill Lynch was engaged in a sophisticated form of gambling by using the price quotes on the commodity exchange. Additionally, they allege that Merrill Lynch violated the Act by confirming fictitious sales and by bucketing sales.

In support of Special Issue 20, appellants argue that under Articles 8652 and 8653 a commodity futures contract is illegal under Texas law if it was contemplated by the parties to the futures contract that there would not be an actual delivery of the commodity sold or bought. *See* Tex.Rev. Civ.Stat.Ann. arts. 8652, 8653 (Vernon Supp.1986).

In response to appellants' argument, appellee asserts that there is no evidence to support the submission of either issue. Additionally, they argue that Articles 8652 and 8653 have been preempted by federal legislation and that any such arguments that Merrill Lynch violated these statutes are without merit.

■ A jury's findings on special issues may be disregarded if they have no support in the evidence. *Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex.1967); *Stevenson v. Adams,* 640 S.W.2d 681, 683 (Tex.App.— Houston [14th Dist.] 1982, writ ref'd n.r.e.). In determining that there is "no evidence" to support a jury finding, the court must consider the evidence in the light most favorable to the finding, considering only the evidence and inferences which support the finding, and rejecting the evidence and inferences contrary to the finding. *Campbell v. Northwestern National Life Insurance Co.,* 573 S.W.2d 496, 497 (Tex.1978).

■ We find no need to decide whether Articles 8652 and 8653 have been preempted by federal legislation because we find that there is no evidence to support either of these issues. Appellants have not alluded to any evidence in the record nor have we found any evidence in the record to substantiate the claim of appellants that Merrill Lynch failed to trade commodity futures contracts on the floor of a commodity exchange. There was no evidence presented by appellants that Merrill Lynch was confirming fictitious sales or bucketing sales. Nor was there any evidence to establish a violation of Articles 8652 and 8653. Accordingly, points of error one and two are overruled.

As part of their defense appellants claim Merrill Lynch engaged in unauthorized trades. Hilsher testified that on December 1, 2, 10, & 12, 1980, he requested that Merrill Lynch sell out his personal account and the joint account, but his requests were not obeyed.

During the charge conference appellants requested the court to submit two special issues which would have asked the jury whether Merrill Lynch engaged in unauthorized trades after December 1, 1980, in either Hilsher's separate account or the joint account. The trial court refused to submit these issues. In points of error three and four appellants argue that such refusal was reversible error.

■ This court is guided by Tex.R. App.P. 184(b) which states that a judgment shall not be reversed unless the error "was reasonably calculated to cause and probably did cause the rendition of an improper judgment...." In reviewing whether the trial court's failure to give an issue is "harmful error," we must determine whether an improper judgment resulted based on the record as a whole. *Lumbermen's Lloyds v. Loper,* 153 Tex. 404, 269 S.W.2d 367, 370 (1954). Appellants' argument for the submission of these issues and the basic complaint under these points of error is that Merrill Lynch failed to sell out the accounts when requested by Hilsher. In reviewing the jury charge given, we find that this issue was answered unfavorably for appellants. In Special Issue No. 27, the jury was asked:

"Do you find from a preponderance of the evidence that Merrill Lynch failed to sell out the accounts in question when instructed by John A. Hilsher to sell?" Answer: "We do not."

■ The court fairly submitted the controlling issue and did not err in refusing the requested issues. Once the court has fairly submitted the controlling issues, it is not reversible error to refuse to submit other and various shades of the same issue. *Sharpe v. Safway Scaffolds Co. of Houston, Inc.,* 687 S.W.2d 386, 393 (Tex.App.— Houston [14th Dist.] 1985, no writ); *Wil-*

*liams v. Texas City Refining, Inc.*, 617 S.W.2d 823, 825 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

If the jury had answered Special Issue 27 favorably to appellants, then the jury would have proceeded to answer Special Issue 28. In Special Issue 28 the jury was asked how much money would have been realized if the accounts had been sold out when Merrill Lynch was instructed to sell. Appellants have not shown how their refused requested issues ask a controlling fact issue separate and apart from the question asked in Special Issue 27. Both the submitted issue and the requested issue are looking for damages for an alleged failure of Merrill Lynch to sell out accounts when requested.

■ Additionally, refusal to submit special issues can be harmless when findings upon issues properly submitted compel judgment which would not have been affected by any finding on the omitted issues and the matter inquired about in the requested issue would not have affected the jury's deliberations on the determinative issue. *Martin v. Crow*, 372 S.W.2d 724 (Tex.Civ.App.—Texarkana 1963, no writ); *Taylor v. Dallas Transit Co.*, 351 S.W.2d 554 (Tex.Civ.App.—Amarillo 1961, writ ref'd n.r.e.). A refusal to submit special issues requires reversal if it can be shown that the refusal probably resulted in an improper judgment. *Hardware Dealers' Mutual Fire Insurance Co. v. King*, 426 S.W.2d 215, 219 (Tex.1968). We will not reverse a judgment of the trial court unless we are of the opinion that error, if any, of the trial court amounted to such a denial of rights of appellants as was reasonably calculated to and probably did cause the rendition of an improper judgment. *Holmes v. J.C. Penney Co.*, 382 S.W.2d 472, 473 (Tex. 1964).

■ In the instant cause if there were any error such error was harmless. Special Issues 13, 14, 33, 35, 36, 37, and 38 asked the jury whether appellants by their conduct (1) ratified all transactions in their accounts (Special Issues 13 and 14); (2) waived their rights to deny liability for

trades in their accounts (Special Issues 33 and 34); (3) waived their rights to complain about the alleged refusal to sell out their positions (Special Issues 35 and 36); and (4) were estopped to deny liability (Special Issues 37 and 38). The jury answered all of these issues in the affirmative. Therefore the error, if any, was harmless since the jury found the action by Merrill Lynch was either ratified or waived by appellants. Points of error three and four are overruled.

■ In points of error five through eight appellants complain of the trial court's failure to submit their requested special issues concerning estoppel and laches. These issues asked the jury to find whether Merrill Lynch was *guilty* of laches or estoppel in not selling out Hilsher's account or the joint account. We find these issues not to be in proper form. It is not error for the trial court to refuse requested issues unless such issues are tendered in substantially correct language. *J. Weingarten, Inc. v. Scott*, 456 S.W.2d 266 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); Tex.R. Civ.P. 279.

■ The word *guilty* can be used in a civil charge where the issue before the jury covers acts the violation of which would ordinarily result in a person being accused or convicted of a crime or of an act denoting intentional wrongdoing which subjects the violator to some sort of punishment. *Great American Insurance Co. v. Langdeau*, 379 S.W.2d 62, 70–71 (Tex. 1964). For *guilty* to be proper in a special issue there must be some affirmative act committed by a party which subjects the party to a penalty. Laches and estoppel do not inquire whether an affirmative act was committed, but are concerned with whether a party failed to act, thus depriving a party of a cause of action. Therefore, the requested issues were not in proper form. Points of error five through eight are overruled.

In points of error nine and ten appellants complain about the trial court's failure to submit issues asking whether Merrill

Lynch willfully deceived or attempted to deceive appellants by any means whatsoever in regard to Hilsher's individual account and the joint account. In point of error thirteen appellants complain about the failure of the trial court to submit a special issue asking the jury if Merrill Lynch represented that the agreements in question conferred or involved rights, remedies or obligations which they do not involve.

In point of error fourteen appellants complain of the trial court's failure to submit the following special issue: "Do you find from a preponderance of the evidence that Merrill Lynch engaged in any unconscionable action or cause (sic) of action?" The issue then defined "unconscionable action or course of action" as an act or practice which, to a person's detriment: (a) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or (b) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer or consideration.

In support of these requested special issues appellants rely on the same basic facts. In support of the denied issues in points of error nine, ten, thirteen and fourteen they rely on Hilsher's testimony that employees of Merrill Lynch told him that the accounts could be sold out within 48 hours. This was the only fact argued by appellants which supported the requested issue complained of in point of error thirteen. In points of error nine, ten and fourteen appellants rely on Hilsher's testimony that Merrill Lynch sold only a portion of the account when he requested them to sell. Finally, in points of error nine and ten appellants also rely on Hilsher's testimony that Merrill Lynch would not sell out the accounts unless appellants met margin calls.

It is evident from the facts relied upon by appellants for the submission of these issues that the controlling issue is whether Merrill Lynch failed to sell out the accounts in question when requested by Hilsher. In Special Issue 27 the jury did not find that Merrill Lynch failed to sell out the accounts in question when instructed by Hilsher to sell. The court was not required to submit the same issue in other and various shades. *Sharpe,* 687 S.W.2d at 393; *Williams,* 617 S.W.2d at 825.

As additional support for the submission of the denied issue in point of error fourteen, appellants argue that Merrill Lynch influenced Hilsher to retain certain commodity positions at a time when they should have been sold, that they put "spreads" on the accounts without his authorization, that he had never dealt in commodities before and that he was of the opinion he would lose no more than twice the amount of money that was originally put into the accounts.

These facts along with the facts previously discussed in support of points of error nine, ten, thirteen and fourteen, at best, would be sufficient to support an issue as to fraud or misrepresentation. In Special Issue 22 the jury did not find that Merrill Lynch cheated, defrauded, or attempted to cheat or defraud appellants. In Special Issues 23 and 25 the jury did not find that Merrill Lynch willfully made or caused false reports or statements to be issued. Thus, the issues requested were duplicative of Special Issues 22 and 23 and were properly rejected by the trial court. Points of error nine, ten, thirteen and fourteen are overruled.

In points of error eleven and twelve, appellants attack the failure of the trial court to submit issues asking the jury whether Merrill Lynch violated the rules and regulations of the commodity exchanges in regard to the account of John Hilsher and in regard to the joint account. In support of these issues, appellants argue that Merrill Lynch continued to make transactions in appellants' accounts when such accounts were in deficit and when appellants failed to meet the margin call issued by Merrill Lynch. Appellants argue that such deficit transactions are in violation of Sections 12 and 14 of Rule 431.02 of the Rules and Regulations of the Board of Trade of the City of Chicago. Under Section 12 orders for trade should not be ac-

cepted unless minimum margin requirements have been met. Under Section 14, Merrill Lynch could not engage in activity known as spreading if such action would cause a deficit in their client's account. The gravamen of these requested issues concern whether it was proper for Merrill Lynch to accept trades from appellants after appellants failed to meet the margin calls. They argue that accepting such trades is in violation of the mandate contained in Rule 827 Section C of the Chicago Mercantile Exchange. Merrill Lynch contends these issues are multifarious, confusing, not submitted in proper form and that there is no private cause of action for these violations.

 At the outset we note that appellants are limited to theories upon which the case is tried, and they may not appeal the case on new or different theories. *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex. 1978). In appellants' pleading where allegations are made of Merrill Lynch's alleged violations of the rules of the Chicago Board of Trade, appellants alleged that Merrill Lynch violated Rule 423.03 by failing to properly or diligently supervise the employees handling the accounts of appellants. Nowhere in appellants' pleading do we find allegations that Merrill Lynch violated margin rules in handling appellants' accounts. Inasmuch as this cause was tried on the issue of improper supervision, it cannot be reviewed and determined by this court on the different theory of violation of margin rules. *Catania v. Garage De Le Paix, Inc.*, 542 S.W.2d 239, 241 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Phillips v. Inexco Oil Co., Inc.*, 540 S.W.2d 546, 550 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

 Even if this error were properly before us we would still find no error. The trial court need not submit special issues unless they are in substantially correct form. *City of Austin v. Selter*, 415 S.W.2d 489, 496 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.). It was appellants' burden to submit a requested issue in substantially correct form. *Cannan v. Varn*, 591

S.W.2d 583, 587 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Holloman v. City of Georgetown*, 526 S.W.2d 682, 686 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.). The issues as submitted were not in proper form in that they did not allude to any particular rule or regulation Merrill Lynch was supposed to have violated. Additionally, by using the term *commodity exchanges* it would have been difficult and confusing for the jury to determine which exchange rules to consider. During the trial evidence was adduced by appellants that Merrill Lynch allegedly violated the Commodity Exchange Act, the rules of the Chicago Mercantile Exchange and the rules and regulations of the Board of Trade of the City of Chicago. Points of error eleven and twelve are overruled.

In point of error fifteen, appellants complain about the testimony of Paul F. Goree, III, and the admission of documents containing a summary of the interest owed. Goree was an operating manager of Merrill Lynch who testified regarding the computation of interest charged on appellants' accounts with Merrill Lynch. Appellants argue that Mr. Goree was not qualified as an expert witness, that he had no personal knowledge of the laws of New York or whether the interest rates used in his calculation were permitted under the laws of New York and that under Rule 1006 of the Texas Rules of Evidence the admission of the contents of voluminous records is proper only when the underlying originals are made available to opposing counsel.

 As to Mr. Goree's qualifications as an expert, it is generally within the trial court's discretion to decide whether an individual qualifies as an expert and we will reverse only upon a showing of abuse of discretion. *Houston Lighting & Power Co. v. Dickinson Independent School District*, 641 S.W.2d 302, 310 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). At trial, however, appellants' counsel made no objection to Goree's qualification as an expert. Failure to object waives assertion of error on appeal. As to appellants' claim of the interest summary sheets as being

442

voluminous records, we find nothing in the record to indicate that this evidence is a summary of other documents. These admitted records show the interest owed over the length of time the accounts were in deficit. They were records of the regularly conducted activity of establishing interest owed in an overdue account. As to Mr. Goree's knowledge or lack of knowledge of New York laws and interest rates, we find that his testimony does not affect the admissibility but affects the weight and sufficiency of his testimony. Point of error fifteen is overruled.

Judgment of the trial court is affirmed.