**DEAN et al. v. MAXWELL.**

No. 2373.

Court of Civil Appeals of Texas. Eastland.

June 11, 1943.

Rehearing Denied July 16, 1943.

E. J. Miller, of Brownwood, for appellants.

E. M. Davis, of Brownwood, for appellee.

FUNDERBURK, Justice.

The subject matter of this action is a claim presented for allowance and payment, in a pending receivership suit. The claim, filed by Dizzy Dean on June 3, 1942, embraced three items: $120 as rental for the use of a pasture for horses constituting part of the property in receivership; $286.-40 for 716 bales of hay valued at 40¢ per bale, used in feeding said horses; and $250, for the reasonable value of Dean's services (alleged to be $50. per month) performed under employment by the receiver in caring for said horses during part of the time receivership was pending.

On August 27, 1942, E. J. Miller filed a plea of intervention, asserting the same claim as Dean's based upon allegations of an assignment of Dean's said claim to him.

The order appointing Ross Bohanan receiver had declared that he was "appointed as receiver of all of the property described in the Plaintiff's petition, and all of the other property, if any, belonging to said partnership composed of E. L. Maxwell and Dizzy Dean. Said livestock, accounts payable and all other property of said partnership and the said Receiver is hereby directed to take immediate control and charge of all of the property and employ whatever help he may need in properly caring for and feeding the said livestock and purchase the necessary feed and

248

supplies to properly preserve the same", etc.

On September 5, 1942, prior to the hearing upon the claim aforesaid, E. L. Maxwell (plaintiff in the receivership suit) filed a contest, urging the court to disallow the claim on the ground that "no definite amount was agreed to be paid to the Defendant [in the receivership suit] Dizzy Dean for his services and no sum of any character was agreed to be [paid?] by the Receiver as rent on said premises, and said Receiver did not purchase any of the hay alleged to have been fed to said horses. That the said Dizzy Dean was employed to care for said property; but that during his employment he has wantonly, willfully, and malicously embezzled a large amount of said property, instead of caring for the same, including the horses involved in said litigation of the reasonable value of $2,000.00, and that he has embezzled and secreted the personal equipment and property to his own use and benefit * * * [which] does not constitute a care for said property which would entitle him to any share therefor unless and until he restores all of said property to Ross Bohanan, Receiver * * * it would be manifestly unfair and unjust and inequitable to allow the defendant any sums of money for the property placed in his care which he thereafter by theft and concealment appropriated to his own use."

Replying to Miller's intervention, said Maxwell alleged that: "said E. J. Miller by his own admissions in this court advised, encouraged and assisted the Defendant in the conversion of said property. That he had knowledge of all the acts of the Defendant, and they were done under his advice and direction, and that the said E. J. Miller is in no better position to assert any claim against the Receiver to said property than his client, Dizzy Dean."

It was undisputed that the assignment of Dean's claim to Miller was with the knowledge and consent of the receiver.

Upon the hearing (nonjury), the Court gave judgment disallowing the claim both as to Dean and Miller, from which they have appealed.

■ It is clear from the record that whatever rights Dean had in the claim were assigned to Miller, and the latter, in his own name, having intervened to assert same, Dean is without interest in the action and may be dismissed from further consideration.

■ We find it necessary to deal but briefly with appellant's contention that the horses sold by Dean and claimed to have thereby been converted were not part of the property in possession of the receiver. The order appointing the receiver (and which named 35 horses) did not purport to enumerate or describe all the items of property of which the receiver was directed to take possession. There was evidence to show that five head of horses (which intervenor claimed was not part of the property in receivership) were placed with the others under an agreement between the receiver and Dean as caretaker, that the qustion of whether they were property of the partnership of which the receiver was required to take possession would be determined later. If they were, in fact, property of the partnership, as there was undoubtedly evidence tending to show, then their unauthorized sale by Dean would, we think, constitute a proper basis for a claim of conversion. There was, therefore, an issue of fact, the court's finding of which was conclusive against appellants.

■ Appellee contends that it had been adjudged that said five head of horses were a part of the partnership property. In this action, however, there was no pleading to that effect. The record reflects no such judgment. If such adjudication was made in this case, it may be that the court could take judicial knowledge of it; but we can give no effect to such adjudication, if any, in the absence of any showing in the record of such a trial and judgment.

■ In our view, contrary to the contention of appellants, there is no principle of innocent purchaser involved. Regarding the statement of the claim and Miller's plea of intervention as the pleadings tendering the issue to be determined, it appears therefrom, we think, that the receiver was not sought to be held liable on the theory of an acceptance of an order of Dean to pay the amount of the indebtedness due him by the receiver to Miller instead of himself. Rather, the theory of liability, as reflected by said pleadings, seems to be that there was a simple assignment of the indebtedness of an undetermined amount, which, because it was made with the consent of the receiver, passed to the assignee, subject to future determination of the proper amount and freed from any liability to offset against the assignor. Unless varied by the interposition of some contract rights or duties, the right conveyed by

249

such an assignment is to be paid the balance, if any, of the debt assigned, after all lawful offsets and credits are allowed. 6 C.J.S., Assignments, p. 1164, § 114, and cases cited.

But we have reached the conclusion that the theory upon which the claim was contested and disallowed is untenable. The judge, in his conclusions of fact, found that Dean had been employed by the receiver to look after and take care of the horses and that a reasonable wage for such service was $1.50 per day from January 8, 1942, to July 8, 1942; that for feeding the horses Dean furnished 525 bales of hay of the reasonable value of 40¢ per bale, which, being credited with $50 of the partnership funds in the hands of Dean, left due $107.-50. It is clear that the disallowance of the recovery of these sums was solely because, as found, that Dean had converted property in receivership of greater value.

■ It is certain that Maxwell in his contest did not plead a counterclaim or cross-action to recover damages for the alleged conversion. His pleading was purely defensive. If appellants had withdrawn the claim nothing would have been left for adjudication. In a supplemental finding it was stated that the receiver had been ordered to "take such steps as were necessary to recover the five horses sold by Dean." Presumably that order has been, or will be, executed. This situation poses this question: Can the fact of conversion, if any, be used as a defense to absolve the receiver from payment of an otherwise just claim, and yet the receiver have the right to recover the value of the allegedly converted property? We think not. In Tex.Jur. it is said: "A defendant is not entitled to an off-set or other affirmative relief * * * under an answer which merely pleads the facts as a defense or in justification." 38 Tex.Jur. p. 369, § 41. And again, "An answer which does not seek and pray for some specific recovery that cannot, for all practical purposes and for his own protection, be given to the defendant under the allegations of his answer treated strictly as a defensive pleading, and which serves to compel the plaintiff to prove his own cause of action, does not present a cross action or counter claim." 38 Tex.Jur. p. 372, § 42; Hoodless v. Winter, 80 Tex. 638, 16 S.W. 427; Commercial Credit Co. v. Wilson, Tex.Civ.App., 219 S.W. 298. In the early case of Davidson v. Edgar, 5 Tex. 492, the Court said: "A reference to the statement of the facts shows that the evidence, rejected by the Court, was this: A witness was asked the extent, or amount, of the injury sustained by the defendant, from the unskillful manner in which the work had been executed. This evidence, it is believed, would have been proper, had the defendant set up this injury, in reconvention, as a demand against the plaintiff. But no such defence was offered by the answer; and for aught that is apparent on the record, the defendant may have a suit pending, for that very injury. It would therefore seem that the evidence was correctly excluded." In our opinion recovery upon a cause of action may not be denied solely upon the fact of the existence of a cause of action in the defendant against the plaintiff which could be asserted by way of a cross-action or counterclaim, but is not, and which if it were asserted and being greater in amount would deprive the plaintiff of any recovery.

■ Appellant contends in effect that the claim, insofar as it involved current wages, was not subject to offset. It is a sufficient answer to this contention that if under the circumstances such exemption exists, the issues concerning it would have to be presented by pleadings, and there are no such pleadings. Further, the contention is predicated upon the assertion of a cross-action or counterclaim by the defendant (receiver and/or contestant), and, as already said, no such cross-action or counterclaim was asserted.

■ However, it may not be amiss to indicate our views upon the question in view of further proceedings in the case, when presumably there may exist pleadings properly raising such an issue. Appellants cite Dempsey v. McKennell, 2 Tex.Civ.App. 284, 23 S.W. 525, 526, which, in an opinion by Judge Williams while on the Court of Appeals, and before becoming one of the great judges of our Supreme Court, held that in a suit involving recovery of current wages, the defendant could not offset the claim by a judgment against the plaintiff assigned to defendant by a third person. However, the opinion says, "We will limit our decision to the facts of this case. * * * We need not consider what discounts arising out of the transactions between the master and servant, pending the employment of the latter, the former may deduct from the wages in settlement. No such questions arise here." Thus it appears that the precise question we have here was not there de-

cided. The question may be concretely stated as follows: In a suit for recovery of current wages, has the defendant no right to offset same by judgment for defendant upon a cross-action or counterclaim? In other words, before wages are paid, if the employer discovers that the employee has stolen his property of greater value than the amount of wages due, or, if he holds a note against the employee, must he nevertheless suffer judgment against him for the wages, and be deprived of the right of offset? It may be that such right of offset would be dependent upon the allegation and proof of insolvency of the employee, but we feel fairly certain that with such allegation and proof the right would exist upon purely equitable considerations. The expressions of our views upon this point may be considered tentative and made for the purpose of directing the parties' attention to it in the further proceedings in this cause.

It being our opinion that, for the reasons set out, the cause should be reversed and remanded, it is accordingly so ordered.