**ITT COMMERCIAL FINANCE CORPORATION f/k/a ITT Diversified Credit Corporation, Appellant,**

v.

**Richard RIEHN, Christina Riehn, and Vicki Leigh Yowell, Appellees.**

**No. 05–88–01314–CV.**

Court of Appeals of Texas, Dallas.

Aug. 13, 1990.

John J. Edwards, Dallas, for appellant.

Donna R. Morris, Fort Worth, for appellees.

Before HOWELL, BAKER and OVARD, JJ.

## OPINION

HOWELL, Justice.

This is a suit for deficiency judgment following the repossession and sale of five mobile homes. ITT Commercial Finance Corporation (Lender) sued Richard Riehn, Christina Riehn, and Vicki Leigh Yowell (Debtors) under a financing agreement executed by Ricwell, Inc. (Corporation). The Corporation had secured "dealer floor plan" financing from Lender; by separate instruments, Debtors had personally guaranteed this debt. After the Corporation

had defaulted, Lender had taken possession and sold all the collateral at a private sale.

Lender then filed this lawsuit to recover the balance of its note. Debtors filed a pleading denominated as a counterclaim alleging the failure to conduct the foreclosure sale in a commercially reasonable manner. Following pre-trial rulings, the trial court conducted a jury trial upon the issues of commercial reasonableness and Lender's alleged breach of contract.

Following a verdict in which the jury found, inter alia, that Lender had failed to dispose of the collateral in a commercially reasonable manner, the court gave judgment that Lender take nothing and that Debtors recover $30,000 in attorney's fees plus additional fees in case of an appeal. Lender asserts six points of error.

We sustain the attack upon the attorney's fee judgment. That award is reversed and rendered. In all other respects, we affirm.

## EXPERT TESTIMONY

■ Lender complains that the trial court erred in allowing Debtors' expert, Michael Rosen, to testify that the sale of the collateral was not commercially reasonable. A party who offers an expert's opinion has the burden to show that the witness is qualified—specifically meaning, he must show that the proffered expert possesses a higher degree of knowledge than an ordinary person or the trier of fact. *Rogers v. Gonzales*, 654 S.W.2d 509, 513 (Tex.App.– Corpus Christi 1983, writ ref'd n.r.e.). However, whether a witness qualifies as an expert is initially within the court's discretion. *Milkie v. Metni*, 658 S.W.2d 678, 679 (Tex.App.–Dallas 1983, no writ). The court's determination will not be disturbed unless a clear abuse of discretion is shown. *Hilsher v. Merrill Lynch, Pierce, Fenner & Smith*, 717 S.W.2d 435, 441 (Tex.App.— Houston [14th Dist.] 1986, no writ); *Milkie*, 658 S.W.2d at 679; *Rogers*, 654 S.W.2d at 513.

■ Witness Rosen presented numerous credentials to establish himself as an expert. He was employed at Rosen Systems, Inc., an industrial auction and appraisal business that has been operating since 1917. He had been a licensed auctioneer since 1970, was a certified member of the Association of Machinery and Equipment Appraisers, and is a member of the Machinery Dealers National Association.

Rosen's company appraises, liquidates, and auctions many types of new, used, and repossessed merchandise, including mobile homes. Although Rosen admitted on direct examination a lack of expertise in the sale of mobile homes at wholesale, he did state that he was an expert in liquidating repossessed collateral and bankruptcy estate assets. He also said that he frequently worked with secured creditors, such as Lender, in preparing various equipment for sale in a commercially reasonable manner. He said that he was familiar with the procedures for advertising sales and publicizing offerings to potential buyers to increase the sale price.

On cross-examination, Lender elicited testimony that Rosen was not a licensed mobile home dealer and that only one percent of Rosen's business related to mobile home sales.

Lender argued below that Rosen's testimony should be excluded because he lacked experience in the wholesale market or in the private sale of mobile homes. The trial court overruled. We conclude that it did not abuse its discretion. Debtors showed that Rosen possessed a higher degree of knowledge than the ordinary person, and, therefore, Debtors satisfied the threshold requirement for the presentation of a supposed expert's opinion. From that point, weight and credibility determinations fell within the province of the jury.

## COMMERCIAL REASONABLENESS

Lender complains that the jury's finding of lack of commercial reasonableness is against the great weight and preponderance of the evidence. In reviewing such a factual insufficiency claim, we must consider all evidence in the record relevant to the fact being challenged; we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to

be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). Credibility determinations are within the province of the jury. *First City Bank v. Guex*, 659 S.W.2d 734, 739 (Tex. App.—Dallas 1983), *aff'd*, 677 S.W.2d 25 (Tex.1984). The appellate court is not authorized to substitute its findings for those of the jury. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). This remains true even if the evidence conflicts such that we could reach a different conclusion. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ Lender, as the plaintiff in its suit for a deficiency, had the burden to establish that the foreclosure sale was conducted in a commercially reasonable manner. *Sunjet, Inc. v. Ford Motor Credit Co.*, 703 S.W.2d 285, 287 (Tex.App.—Dallas 1985, no writ). In general, expert testimony is required to establish the commercial reasonableness of a sale. *Id.* at 289. Lender presented the testimony of Lynn Turney, a mobile home salesman, and Steve Waller, an account officer of Lender.

■ Turney testified on direct examination that he had been in the mobile home business—sales, service, transportation, and installation—for nineteen years. He stated that, in the past, he had purchased repossessed mobile homes from Lender for fifty percent of the manufacturer's invoice, a price he considered reasonable. Turney said that, in his opinion, the price that Lender received for the five mobile homes at issue in this case, sixty percent of invoice, was also reasonable. Turney also testified that he did not think advertising the sale would have increased the price obtained at the sale.

On cross-examination, Turney admitted that he was not familiar with the homes involved in this case, nor with the procedure used to sell them. He stated that he had not been asked to render an opinion whether the sale itself was commercially reasonable. His testimony was relevant *only* as to the reasonableness of the price obtained.

Waller testified that he had been employed by Lender for almost four years and had sold approximately 200 mobile homes to dealers in the wholesale market. He said that he received three written bids for the sale of the five repossessed mobile homes in question, ranging from forty percent to sixty percent of the original invoice price. Waller testified that, based on his experience, the method in which he sold the five mobile homes was "very reasonable."

On cross-examination, Waller admitted that Lender did not advertise the sale, did not send out letters to dealers, and did not follow up on two of the three written bids. Waller said that all he did to "market" the collateral was to transport it to Morgan Driveways (Drive Away?) in Fort Worth, a large transporter and storage facility for mobile homes. He said that potential buyers could have gone by and could have viewed the homes at that location, although it was conceded that the on-site employees had little or no information about the ownership of the homes, their resale status, asking price, etc.

In opposition to this evidence, Debtors called Michael Rosen, an auctioneer, whose testimony as an expert we have held admissible. He testified as to the manner in which he would have conducted the sale of these mobile homes, including posting a sign on the property, placing newspaper advertisements, mailing notices to dealers in a five-state area, and telephoning dealers in the local area. He said that this type of marketing increases the competitive bidding and, thus, increases the sale price. Considering these factors, Rosen said he did not believe the sale was commercially reasonable. We have already discussed his testimony, including his concessions on cross-examination that he had never sold mobile homes at wholesale and that he had never conducted private sales.

Viewing all of the evidence and leaving credibility determinations to the jury, we cannot conclude that the jury's verdict was against the great weight and preponderance of the evidence. The point is overruled.

### THE *PINEY POINT* CASE

■ The statutes require that a lender taking possession of collateral after default

shall give notice of his intent to sell and that he shall effect a commercially reasonable sale. Tex.Bus. & Com.Code Ann. §§ 9.504, 9.505 (Vernon Supp.1990). As we understand the argument under point three, Lender contends that it is entitled to its deficiency in spite of the fact that the jury refused to find a commercially reasonable sale, grounding its argument on the proposition that it was uncontroverted that Lender had given proper notice of intent to sell at private sale. In essence, Lender's point reduces to the claim that the lack of commercial reasonableness portion of the verdict was an immaterial finding in view of the undisputed fact that the notice of sale given to Debtors was proper. We reject the contention. It has long been held that a secured creditor who deals with the collateral in an unlawful manner commits an act of conversion. We hold that the code requires that a creditor who elects to sell the collateral must both give notice and sell in a commercially reasonable manner. The omission of either of these statutorily required steps reduces the unlawful sale into an act of conversion.

Under its point, Lender relies primarily on *Piney Point Investment Corp. v. Photo Design, Inc.*, 691 S.W.2d 768 (Tex.App.— Houston [1st Dist.] 1985, writ ref'd n.r.e.). Lender seeks to distinguish *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 772 (Tex.1982) (where a lender has neither given the statutory notice nor conducted a commercially reasonable sale, it is barred from suing for a deficiency). Lender argues that *Tanenbaum* applies only when there has been no proper notice of intent to sell *and* the sale was not commercially reasonable; Lender argues that *Piney Point* allows a recovery of the deficiency if the lender has complied with the statutory notice requirement alone.

Lender has misread *Piney Point.* Admittedly, *Piney Point* differs from *Tanen-*

*baum* in that the *Piney Point* lender did give proper notice of intent to sell, whereas the *Tanenbaum* lender did not do so. In this respect, today's case is more comparable to *Piney Point* than it is to *Tanenbaum.*[1] *Piney Point,* however, is no comfort to Lender. That case involved the sale of a going business, with the seller taking a lien upon the business equipment to secure the entire debt. Apparently, the equipment represented only a small part of the value received by the debtor. On default, that lender-seller repossessed the equipment and resumed utilizing it in the operation of the same or a similar business, in spite of the fact that the lender-seller had also given notice of intent to sell it. At the time of trial, two years later, only a small part had actually been sold. The trial court impliedly held that there had been no commercially reasonable sale, but it refused to read *Tanenbaum* as a bar to prevent the lender-seller from suing upon its note. Instead, the *Piney Point* court deducted the *full fair market value* of the equipment at the time of retaking from the unpaid portion of the note and gave judgment for the balance.

The judgment was upheld on appeal. Thus, in spite of the broad language of *Tanenbaum, Piney Point,* in effect, held that where there has been proper notice but the sale is not commercially reasonable, the lender is not wholly barred from seeking a deficiency; instead, he must give credit for the *full fair market value of the collateral.* Under *Piney Point,* deficiency claims are limited to the balance due, if any, in excess of the fair market value of the converted collateral.

■ We need not explore the soundness of the *Piney Point* rule because our Lender did not lay a foundation for the application of *Piney Point* to this case. Lender presented neither pleadings nor evidence of the full fair market value of the five mobile

---

1. Whether the rule pronounced in *Piney Point* will ultimately prevail seems open to question. We find it difficult to reconcile the broad language of *Tanenbaum* and this court's decision in *Whirlybirds Leasing Co. v. Aerospatiale Helicopter Corp.*, 749 S.W.2d 915 (Tex.App.—Dallas 1988, no writ), with the ruling in *Piney Point.*

On the other hand, we do observe that the notice deficiency alone was a sufficient ground for the result in both *Tanenbaum* and *Whirlybirds.* It was unnecessary for either decision to explore the precise situation now before us, proper notice followed by the failure to effect a commercially reasonable sale.

homes at the time of retaking. It limited its evidence to the question of commercial reasonableness and the amount of the debt. As discussed above, it is true that Lender did produce expert witnesses to testify that the selling price was reasonable. However, neither of them testified in accordance with the classic test of fair market value—the price that would in all likelihood be agreed upon between a willing seller and a willing buyer, neither of them being under any compulsion to buy or to sell. It is clear that Lender's evidence relating to value was addressed to the question whether the sale under attack was commercially reasonable. A commercially reasonable sale is a forced sale; it is not expected to fetch fair market value. It is well established that prices yielded by sales of a defaulting debtor's property, which has been pledged as collateral and which is being sold at the behest of the creditor (often referred to in generality as fore-

closure sales), are not competent as evidence of fair market value. *Southwest Bank and Trust Co. v. Executive Sportsman Ass'n*, 477 S.W.2d 920, 926 (Tex.Civ. App.—Dallas 1972, writ ref'd n.r.e.); *Price v. Gulf Atl. Life Life Ins. Co.*, 621 S.W.2d 185, 187 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). On this record, without competent evidence of fair market value, we cannot determine the amount of deficiency judgment to which Lender might be entitled, if any.[2]

We recognize that in response to questions two and three, the jury found that Lender breached the guaranty agreements[3] signed by Debtors by failing to dispose of the collateral in a commercially reasonable manner and further found that the damages thereby sustained by Debtors were "$.0." We refuse to torture this part of the verdict into an implied finding that the sale fetched the full fair market value,

**2.** The only witness to testify concerning "fair market value" or any reasonable equivalent of the term was co-defendant Debtor Richard Riehn, who testified that the fair market value of each of the five mobile homes sold by Lender ranged from twenty to twenty-two thousand dollars. However, there is no indication that he was testifying with respect to the legal definition of fair market value. It would further appear that if these values were applied, they would wipe out the indebtedness sued upon or virtually do so; the testimony is of no utility to Lender. Any recovery by Lender would be further inhibited by the lack of pleadings and a proper jury question.

**3.** We deplore this method of submission, asking the jury if one of the parties "breached" the contract. Whether a contract has been breached is a question of law for the court, not a jury question. *Barton v. Davis*, 441 S.W.2d 299, 300–01 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.); *Foerster v. Peoples*, 362 S.W.2d 918, 918 (Tex.Civ.App.—Amarillo 1962, no writ). We disagree with *Porter v. Reaves*, 728 S.W.2d 948, 949–50 (Tex.App.—Fort Worth 1987, no writ). Even the most expansive application of rule 277 of the Texas Rules of Civil Procedure does not authorize the submission of questions of law to the jury. *See* Tex.R.Civ.P. 277.

The trial court must examine the contract and determine what conduct is required of the parties. Then, insofar as there is a dispute concerning the failure of a contract party to conduct himself in accordance with contract requirements, the court should submit the disputed fact question to the jury. *See Various*

*Opportunities, Inc. v. Sullivan Invs., Inc.*, 677 S.W.2d 115, 120 (Tex.App.—Dallas 1984, no writ) (jury may properly be asked whether acts specified in contract occurred). Here, by question one, the court inquired if lender conducted the sale "in a commercially reasonable manner." Question two, conditioned upon a negative response to question one, inquired of the jury if lender breached the guaranty agreements by so failing to dispose in a commercially reasonable manner. If the inquiry sought to establish anything beyond the fact finding required in answer to the first question, it was purely a legal question that the court should have determined through construction of the documents. Question three, conditioned on an affirmative answer to number two, was likewise improper, asking the amount of money that would fairly compensate Debtors "as a result of Plaintiff's breach [irrevocably referring back to number two], if any." If the trial court interpreted the contract as including an implied requirement for a commercially reasonable sale, and if it determined that the absence of a commercially reasonable sale was an absolute bar to a suit for deficiency, question three was surplusage; the negative answer to question one, in and of itself, required a take nothing judgment. On the other hand, if the trial court determined that *Piney Point* was applicable, a question we have declined to reach, and if the matter had been raised by the pleadings and the evidence, it should have asked the jury to determine the fair market value of the mobile homes at the time of repossession so that the court could determine the proper amount of credit against the note balance to include in its judgment.

particularly on the evidence had. By failing to present pleadings or competent evidence or to request a jury question on fair market value, Lender waived the right to contend that, even if the sale were commercially unreasonable, Lender should have its deficiency because the sale yielded at least the full fair market value and Debtors therefore sustained no harm. Such is the rationale of *Piney Point* as we read it; such is the only basis upon which Lender could legitimately invoke *Piney Point.* That theory of recovery has been waived. Point three is overruled.

### BREACH OF THE GUARANTIES

By point of error, Lender attacks the legal and factual sufficiency of the answer to question two, through which the jury found that there had been a breach of the guaranty agreements. We have already held that the inquiry was improper. We further hold that the jury's answer was immaterial. Whether the jury considered that the failure to sell in a commercially reasonable manner was a breach of the guaranties was immaterial. The matter was purely a question of law for the court to decide. The jury's answer, no matter what it may have been, could not have supported a judgment for or against either party, the ultimate test of an immaterial jury finding. *See Estate of Lee,* 564 S.W.2d 392, 394 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

It follows that the quantum of evidence in support of the answer, if any, was a pointless inquiry. We decline to rule further on appellant's point of error.

### DEBTORS' COUNTERCLAIM AS A BASIS FOR ATTORNEY'S FEES

By point of error, Lender attacks the award to Debtors of attorney's fees. The trial court apparently considered that the allegations of the counterclaim plus the jury's answer to question two purportedly finding a breach of the guaranty agreements constituted a sufficient basis for the award of attorney's fees to Debtors.

Anticipating that Lender would argue the jury's answer number three, finding that Debtors sustained zero damages as a result of Lender's breach of the guaranty agreements, as a bar to the recovery of attorney's fees, Debtors assert by crosspoint that the trial court erred in failing to award nominal damages. In connection therewith, Debtors urge that they may have attorney's fees as an appurtenance to the recovery of nominal damages. We hold that Debtors were not entitled to attorney's fees and were furthermore not entitled to nominal damages.

Debtors sought attorney's fees by way of a pleading designated by them as a counterclaim. In the pleading, Debtors asserted that Lender had failed to sell the collateral in a commercially reasonable manner and that the Lender had thereby committed a breach of the contracts between the parties for the financing of the mobile homes. They pleaded for damages as follows:

> Counter–Plaintiffs are therefore entitled to recover from Counter–Defendant all losses caused by Counter–Defendant's failure to comply with Section 9.504, which losses Counter–Plaintiffs would show are equal to the amount Counter–Defendants are seeking to recover from Counter–Plaintiffs as a deficiency judgment in the amount of $32,908.40 plus prejudgment interest from the date of the sale. In the alternative, Counter–Plaintiffs are entitled to recover at least nominal damages.

They concluded their counterclaim with a demand for "judgment in an amount in excess of the minimum jurisdictional limits of the Court" plus attorney's fees.

It is true that "[t]he duty to dispose of collateral in a commercially reasonable manner is an implied covenant in all contracts under ... [section] 9.504." *International Bank v. Morales,* 736 S.W.2d 622, 624 (Tex.1987); *see also First City Bank v. Guex,* 677 S.W.2d 25, 30 (Tex.1984). It follows that the jury's finding under question one of the lack of a commercially reasonable sale, without more, established a breach of contract by

Lender. Furthermore, a guarantor [4] of the secured indebtedness has the same right as his principal to challenge the commercial reasonableness of a lender's sale following repossession. *See Adams v. Waldrop,* 740 S.W.2d 32, 33 (Tex.App.—El Paso 1987, no writ); *Peck v. Mack Trucks, Inc.,* 704 S.W.2d 583, 585 (Tex.App.—Austin 1986, no writ).

On the other hand, a litigant is not entitled to bring a counterclaim unless he has a right to affirmative relief. *See Rose v. Motes,* 220 S.W.2d 734, 735 (Tex. Civ.App.—Galveston 1949, no writ); *Dean v. Maxwell,* 173 S.W.2d 246, 249 (Tex.Civ. App.—Eastland 1943, no writ). Plainly, Debtors pleaded no cognizable claim for affirmative relief. "To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." *General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 570 (1990). Their pleading was an artful but nevertheless transparent effort to conjure up a plea for nonexistent affirmative relief as a vehicle to which Debtors might attach a claim for defensive attorney's fees. We commend Debtors for their resourcefulness but reject their counterclaim as without substance. Inasmuch as the counterclaim fails, the attorney's fee claim also fails.

Of course, the right to bring an independent action for wrongful foreclosure or to assert wrongful foreclosure by way of counterclaim is well established. However, a debtor has no right to affirmative relief unless he can show that the fair market value of the collateral at the time of taking exceeded the unpaid balance of the indebtedness inclusive of interest and other lawful charges. *See League City State Bank v. Mares,* 427 S.W.2d 336, 340 (Tex.Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Black v. Burd,* 255 S.W.2d 553, 556 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.) (both cases: measure of damages is value of the property taken less unpaid debt). Unless the debtor can make this proof, he has no right to recover net money into his pocket—hence, no right to affirmative relief. Unless fair market value exceeds the debt, he has no more than a defense to the lender's claim, and if the defense is less than complete, the lender is entitled to a net judgment. *See Piney Point,* 691 S.W.2d at 769–70. At the most, he has no more than a plea for the reduction in the amount of the lender's judgment on account of conversion of the collateral.

Furthermore, in the instant case, any right to obtain net money damages from Lender for the unlawful disposition of collateral with a fair market value in excess of the indebtedness was the property of Debtors' corporate principal. Being as they were guarantors and not principals, Debtors had no standing to bring an action, either independently or by way of counterclaim, for value in excess of the indebtedness, if any.

Had Debtors' principal been a party, it could have pleaded an unlawful sale and a fair market value of the collateral in excess of the indebtedness. In such instance, question two would properly have inquired (conditioned on the negative finding under number one, as was done by the court below) as to fair market value at the time of taking and a net recovery to Debtors' principal could conceivably have been obtained.

By their pleadings and by the manner in which they presented their "counterclaim," Debtors abandoned any contention that the fair market value of the converted collateral exceeded the debt. They pleaded their "losses" as the "amount Counter–Defendants are seeking to recover." The pleading was entirely specious. Had the trial court entered a take nothing judgment, as it did with respect to the claim pleaded by Lender-plaintiff, simple logic dictates the obvious: Debtors could have had none of

4. Debtors are all guarantors; the corporate principal to the financing agreement was never made a party to the case.

the losses pleaded by them—the precise result in the court below. When Lender's action failed, the "losses" (damages) pleaded in the counterclaim evaporated. On the other hand, had the court found a commercially reasonable sale, the very judgment that established the supposed "loss" would have established that the amount was lawfully due and owing; Debtors would still have had no legally cognizable damages or losses. Restating the matter in a slightly different manner, the supposed "counterclaim" stated a claim upon which Debtors could not have recovered a money judgment, whether Lender's original petition had been upheld or defeated. This we hold was an insufficient vehicle to which Debtors might have attached a valid attorney's fee claim.

If the law were otherwise, it would follow that it is available for virtually every debtor, being sued for the nonpayment of a contractual obligation to pay, to file a "counterclaim" asserting that he has sustained a "loss" in the amount being sued for by his creditor, and if the debtor is successful in defeating any part of the claim, he is entitled to attorney's fees as an adjunct to his counterclaim. Perhaps this should be the law. Perhaps the Legislature should amend the attorney's fee statute, Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986), to provide that whoever prevails in an action to recover for the breach of a contract to pay an indebtedness may have attorney's fees.[5] However, we firmly decline to assume legislative functions. The attorney's fee statute of general application, section 38.001, the only statute pleaded and relied upon by Debtors, has consistently been applied against Debtor's position. *See, e.g., Collerain v. City of Granbury*, 760 S.W.2d 364, 368 (Tex. App.—Fort Worth 1988, no writ).

The statute provides that a litigant "may recover reasonable attorney's fees ... in *addition* to the amount of a *valid* claim ..., if the claim is for ... [the breach of] an oral or written contract." Tex.Civ.Prac.

& Rem.Code Ann. § 38.001 (emphasis added). The emphasized words "addition" and "valid" cannot be ignored; they are part of the statute. The claim presented by the attorney's fee claimant must be valid or the attorney's fee claim must fail. Likewise, there must be a recovery of money, or at least something of value; otherwise, the attorney's fee award cannot be described as an "addition" to the claimant's relief. *See Chapman Air Conditioning, Inc. v. Franks*, 732 S.W.2d 737, 741 (Tex.App.— Dallas 1987, no writ).

Debtors urge *McKinley v. Drozd*, 685 S.W.2d 7 (Tex.1985), for the proposition that a party need not have a net recovery in order to obtain an attorney's fee award. That suit was for the balance due under a construction contract with a counterclaim for defective performance. Both parties prevailed upon their pleas for affirmative relief. The Supreme Court held that the fact that the valid claim of one party may be exceeded by the opponent's claim does not defeat the right to attorney's fees. *Id.* at 10–11. However, the distinction is that, here, Debtors had no true damages for which they might have claimed; at most, they merely had a defense to Lender's claim. In order to come within *McKinley*, the holder must have possessed a claim such that he could have prosecuted it to a judgment for money or value, even if his opponent had never filed his competing claim. *See General Land Office*, 789 S.W.2d at 570. Obviously, Debtors' "counterclaim" did not meet this test; it formed no basis for the recovery of attorney's fees.

## NOMINAL DAMAGES AS A BASIS FOR ATTORNEY'S FEES

Anticipating the possibility that their claim for "losses" might be rejected, Debtors pleaded in the alternative for nominal damages and have filed a cross-point seeking nominal damages. We reject the claim for nominal damages. Debtors presented neither pleadings nor evidence

---

5. We note that the attorney's fee section of the Declaratory Judgment Act has been interpreted to so provide, in substance. *See* Tex.Civ.Prac & Rem.Code Ann. § 37.009 (Vernon 1986); *Hartford Casualty Ins. Co. v. Budget Rent-A-Car Systems, Inc.*, 796 S.W.2d 763, 771 (Tex.App.—Dallas 1990, n.w.h.).

upon which they might have independently recovered actual damages. Thus, they are not entitled to nominals. We think the attorney's fee statute, section 38.001, refers to something more than nominal damages when it specifies that attorney's fees must be in "addition" to the amount of a "valid" claim. Again, if we accept Debtors' invitation and hold that nominal damages alone will suffice to uphold a statutory award of attorney's fees, it appears to us that it will hereafter be available to practically every party opposing a suit for the collection of a debt to assert that at least part of the debt being sued for is not owing and to counterclaim for nominal damages plus attorney's fees. We decline the invitation. Such avulsive change in the law is for the Legislature, not the courts.

Although there are many authorities discussing the nature of nominal damages in the abstract, there are few decisions analyzing the nature of the relief afforded. On analysis, nominal damages are simply a vehicle for taxing the defendant with costs. *Press v. Davis,* 118 S.W.2d 982, 991 (Tex. Civ.App.—Fort Worth 1938), *aff'd in part and rev'd in part sub nom. Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438 (1940). The notion that nominal damages are for the purpose of vindicating rights where no damages were sustained cannot be sustained. Should a party file a petition for nominal damages only, he has failed to state a cause of action. *Id.*; *see Spencer v. Davis,* 298 S.W. 443, 446–47 (Tex.Civ.App. —Beaumont 1927, no writ) (op. on motion for reh'g). Our State constitution forbids the giving of advisory opinions. *General Land Office,* 789 S.W.2d at 570. A suit that seeks no substantive relief is a suit for an advisory opinion. *Id.*

It follows that Debtors' counterclaim, insofar as it sought nominal damages, added nothing to their action. Had the supposed counterclaim not been filed and had the same verdict been returned, the trial court should have entered the same judgment upon Lender's action that it did, that Lender-plaintiff take nothing and pay all costs. Debtors' supposed counterclaim, insofar as it sought nominal damages as a vehicle for the assessment of costs against Lender,

was superfluous; the take nothing judgment upon Lender's own petition was a sufficient basis for that relief. The "counterclaim" for nominal damages added nothing of substance to the case.

The ultimate question that we must answer in this connection is whether the Legislature intended that the right to nominal damages should be a sufficient recovery to support the recovery of attorney's fees. We hold that nominal damages, traditionally the sum of one dollar or perhaps ten dollars, is not the type of "valid" claim contemplated by the Legislature which will entitle a litigant to the "additional" relief of attorney's fees. We sustain Lender's point, and deny the attorney's fee claim.

The judgment of the trial court now before us and the verdict upon which it is based have established that Lender committed a breach of contract. That judgment already provides that costs shall be taxed against Lender. We have held that nominal damages are an insufficient basis for recovery of attorney's fees, at least under the facts of this case. It follows that an award of nominal damages in response to Debtors' counterclaim would be a vain and useless act. Debtors' cross-point seeking nominal damages is also overruled.

## CONCLUSION

By point of error, Lender asserts that the trial court erred in holding that it had the burden on all jury questions. On the basis of previous discussion, we hold that the jury's negative finding upon the first question, inquiring if the collateral was sold in a commercially reasonably manner, required a judgment that Lender take nothing and pay all costs. Inasmuch as our judgment will be to this effect, we hold that Lender could not have been harmed by any mislaid burden on any other issue. The burden was correctly laid on question one. *See Sunjet,* 703 S.W.2d at 287. We decline to rule on the issue of burden with respect to other questions.

The attorney's fee award is reversed and rendered. In all other respects, the judgment is affirmed.