# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3370

_____

| | | |
|---|---|---|
| John R. Beardmore; Kathrine A. Beardmore; Terry Hedstrom, | * | |
| | * | |
| | * | |
| Plaintiffs/Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| American Summit Financial Holdings, LLC, | * | Appeals from the United States District Court for the District of Minnesota. |
| | * | |
| Defendant Third Party Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Superior Financial Holding Corporation; Briggs and Morgan, P.A.; Thomas P. Kell; Todd R. Haugan; Richard Leftcowitz, | * | |
| | * | |
| | * | |
| | * | |
| Third Party Defendants/ Appellees. | * | |

_____

No. 02-3371
_____

John R. Beardmore; Kathrine A.        *
Beardmore,                            *
                                      *
            Plaintiffs/Appellants,    *
                                      *
      v.                              *
                                      *
American Summit Financial Holdings,   *
LLC,                                  *
                                      *
            Defendant/Appellee.       *

_____

Submitted: June 9, 2003

Filed: December 8, 2003
_____

Before MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges, and BOGUE,[1]
      District Judge.
_____

RILEY, Circuit Judge.

      American Summit Financial Holdings, LLC (American Summit) appeals the
district court's grant of summary judgment to John and Kathrine Beardmore
(collectively Beardmores), Thomas P. Kell, Todd Haugan, and Richard Leftcowitz

------

      [1]The Honorable Andrew W. Bogue, United States District Judge for the District
of South Dakota, sitting by designation.

(collectively Kell Group), and Superior Financial Holding Corporation (Superior). On summary judgment, the district court concluded (1) American Summit sold collateral in a commercially unreasonable manner, because American Summit breached a letter agreement setting forth the sale procedure, (2) American Summit improperly rejected the Beardmores' tender, (3) American Summit lacked standing to pursue a claim for *ultra vires* issuance, and (4) the Texas absolute bar rule did not apply. American Summit contends it properly refused the Beardmores' tender and has standing to pursue a claim for Superior's *ultra vires* issuance of shares to the Kell Group. The Beardmores cross-appeal, contending the district court misapplied the Texas absolute bar rule. We affirm in part, reverse in part, and remand.[2]

## I.    BACKGROUND

### A.    Factual Background

The Beardmores borrowed $2.5 million from Founders Equity Group, Inc. (Founders) to purchase 3.35 million Superior shares. The Beardmores signed a promissory note (Founders Note) and a security agreement (Security Agreement). The Security Agreement granted Founders a security interest in 2.5 million Superior shares, the Innovative Financial Systems, Inc. (IFS) shares held by the Beardmores, and at least one parcel of the Beardmores' real estate.[3] Additionally, the Beardmores granted Founders an option (Founders Option) to purchase 250,000 Superior shares for $250,000. The Founders Note, the Security Agreement, and the Founders Option all provide Texas law governs.

The Beardmores sold one million Superior shares covered by the Security Agreement, applying the proceeds to the Founders Note. Superior issued the Beardmores a new stock certificate (Certificate 33) evidencing 1.5 million Superior

---

[2]Weakness on both sides is the grist of many disputes.

[3]The number of real estate parcels securing the Founders Note is not material to this appeal.

shares, which the Beardmores delivered to Founders. The Beardmores also granted Duckson, Carlson, Bassinger & Mitchell, LLC an option (DC Option) to purchase two million Superior shares at $1.50 per share.

After the Beardmores defaulted on the Founders Note, Founders notified the Beardmores of its intent to foreclose on the collateral securing the Founders Note. The Beardmores requested Founders delay the foreclosure sale. In a reply letter dated February 22, 2001, Founders agreed to delay the foreclosure sale for a specific period of time, if the Beardmores agreed, *inter alia*, the sale procedure Founders outlined in the February 22 letter was commercially reasonable. The February 22 letter provided the sale would be commercially reasonable if Founders first sold the Superior shares and only sold the IFS shares if a deficiency existed after the sale of the Superior shares. The Beardmores agreed this sale procedure would be commercially reasonable. The appeal and our decision focus on this provision.

A week later, Founders assigned the Founders Note and Founders Option, and Founders' security interests in the Superior shares, IFS shares, and real estate to American Summit. Pursuant to the assignment, Founders transferred Certificate 33 and the IFS shares certificate to American Summit. Contrary to the sale procedure outlined in the February 22 letter, American Summit notified the Beardmores of its intent to sell publicly the Beardmores' IFS shares on April 27, 2001. American Summit then sold the IFS shares at a public sale for $2,000.

Three days before the public sale of the IFS shares, American Summit notified the Beardmores of its intent to exercise the Founders Option. Seven days after the public sale, the Beardmores tendered a $2 million check to American Summit to satisfy the Founders Note. The Beardmores generated the $2 million by selling the shares evidenced by Certificate 33 to the Kell Group. Superior subsequently issued Certificates 43, 44, and 45 to members of the Kell Group to replace Certificate 33 and a successor replacement certificate to Certificate 33 (Certificate 42). American

-4-

Summit refused the $2 million tendered check, asserting it had acquired the DC Option the day before and had exercised the DC Option by offsetting the amount outstanding under the Founders Note against the DC Option purchase price for Superior shares at $1.50 per share.

### B.    Procedural Background

The Beardmores brought a declaratory judgment action against American Summit, requesting the district court declare American Summit converted the Beardmores' Superior shares, and the Texas absolute bar rule prevented American Summit from pursuing a deficiency judgment. American Summit answered and counterclaimed, requesting that the district court allow American Summit to foreclose its security interests and declare Superior's issuance of Certificate 42 was unauthorized, illegal, and *ultra vires*. American Summit also filed a third-party complaint against the Kell Group, claiming, *inter alia*, Superior's issuance of Certificates 43, 44, and 45 was unauthorized, illegal, and *ultra vires*.

On summary judgment, the district court concluded, *inter alia*, (1) American Summit's sale of the IFS shares before the Superior shares violated the February 22, 2001 letter agreement and constituted a commercially unreasonable disposition, (2) American Summit converted the Beardmores' Superior shares when it rejected the Beardmores' tender of the $2 million check to satisfy the Founders Note, (3) the Texas absolute bar rule did not absolve the Beardmores from liability under the Founders Note, and (4) American Summit lacked standing to challenge the issuance of Certificates 43, 44, and 45. On appeal, American Summit claims it properly refused the Beardmores' tender and has standing to challenge the issuance of Certificates 43, 44, and 45. The Beardmores cross-appeal, asserting the Texas absolute bar rule absolves them from liability.

Notwithstanding the numerous issues raised by the parties, we address only the issues necessary to resolve the parties' interests in the Superior shares, the

Beardmores' liability under the Founders Note, American Summit's interest in the Beardmores' real estate, and American Summit's standing to challenge the issuance of Certificates 43, 44, and 45. Resolving these issues will also resolve the parties' other concerns raised on appeal.

## II.   DISCUSSION

"We review the district court's grant of summary judgment de novo." Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1027 (8th Cir. 2003). "We will affirm a district court's grant of summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . .,' demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)).

### A.   Superior Shares and the Beardmores' Liability

Under Texas law, every aspect of a secured creditor's disposition of collateral must be commercially reasonable. Riyad Bank v. Al Gailani, 61 S.W.3d 353, 358 (Tex. 2001).[4] If the secured creditor disposes of the collateral in a commercially

_____

[4]Section 9.504(c) provides:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

Tex. Bus. & Comm. Code Ann. § 9.504(c) (Lexis 1999). The Texas Legislature in 1999 substantially revised Chapter 9 of the Texas Business and Commercial Code effective July 1, 2001. Riyad Bank, 61 S.W.3d at 354 n.1. All references to the Texas Business and Commercial Code in this opinion are to Chapter 9 as it existed before these amendments, unless otherwise noted.

unreasonable manner, the secured creditor is deemed to have retained the collateral in complete satisfaction of the debt, prohibiting the secured creditor from pursuing a deficiency judgment.  See Tanenbaum v. Econ. Lab., Inc., 628 S.W.2d 769, 771-72 (Tex. 1982); Van Brunt v. BancTexas Quorum, N.A., 804 S.W.2d 117, 128 (Tex. Ct. App. 1990) (en banc). This absolute bar rule rests on the Texas Business and Commercial Code's (Code) policy of forcing the secured creditor to elect (1) to repossess and dispose of the collateral in a commercially reasonable manner under section 9.504(c), or (2) to repossess and retain the collateral in complete satisfaction of the debt under section 9.505(b).[5]  Tanenbaum, 628 S.W.2d at 771-72.  When the secured creditor fails to dispose of the collateral in a commercially reasonable manner, "an irrebuttable presumption [arises] that the creditor has proceeded under section 9.505 rather than section 9.504."  Van Brunt, 804 S.W.2d at 129.

Texas  abandoned the absolute bar rule effective July 1, 2001.  See Act of June 18, 1999, 76th Leg., R.S., ch. 414 § 1.01 Tex. Gen. Laws 239 (codified at Tex. Bus. & Comm. Code Ann. § 9.626(a)(3) & (a)(4) (West 2003)).  Although Texas abandoned the absolute bar rule, we apply the absolute bar rule here, because the foreclosure sale occurred before the abrogating act became effective.

As neither the Beardmores nor American Summit challenge the district court's rationale in concluding American Summit disposed of the collateral in a commercially unreasonable manner, we address only the Texas absolute bar rule's effect on the

---

[5]Section 9.505(b) provides:

In any other case involving . . . other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection.

Tex. Bus. & Comm. Code Ann. § 9.505(b).

parties' rights to the Superior shares.[6]  The Texas courts have not addressed the secured creditor's rights and the debtor's rights to repossessed, but not yet disposed of collateral, after the secured creditor has disposed of a portion of the collateral in a commercially unreasonable manner.

Although American Summit is deemed to have retained the collateral in satisfaction of the Founders Note, we must ascertain what collateral American Summit is deemed to have retained.  In Tanenbaum, the Texas Supreme Court concluded a secured creditor impliedly retains the collateral in satisfaction of the debt when the secured creditor manifests such an intent.  Tanenbaum, 628 S.W.2d at 771-72; see also Schmode's, Inc. v. Wilkinson, 361 N.W.2d 557, 559 (Neb. 1985) (noting Tanenbaum is based on a secured creditor manifesting an intent to retain the collateral).  Tanenbaum is premised on a secured creditor failing to give proper notice to the debtor before disposing of the collateral.  Tanenbaum, 628 S.W.2d at 771-72; see also Tex. Bus. & Comm. Code Ann. § 9.504.  Under Tanenbaum, a secured creditor's failure to satisfy the section 9.504 requirements creates an irrebuttable presumption the secured creditor intended to elect the remedy available under section 9.505—retention of collateral in satisfaction of the debt.  See Van Brunt, 804 S.W.2d at 129.[7]

The district court deemed American Summit's disposition of the collateral commercially unreasonable because American Summit breached the February 22, 2001 letter agreement.  The February 22 letter agreement set forth American Summit's obligations to proceed with a sale under section 9.504(c).  American Summit agreed to first sell the Superior shares, apply the sale's proceeds to the

---

[6]Unless otherwise noted, all further references to the Superior shares will be to those shares evidenced by Certificate 33.

[7]Another way to look at the issue is to say, satisfaction of the section 9.504 requirements is a condition precedent to pursuing a deficiency claim.

Founders Note, and sell the IFS shares only if a deficiency remained. Despite the February 22 letter agreement, American Summit first sold the IFS shares, while retaining the Superior shares. American Summit exercised rights contrary to those outlined in the letter agreement and contravened the agreed-upon commercially reasonable disposition of both the IFS and the Superior shares. Because American Summit's future disposition of the Superior shares will also be commercially unreasonable under the letter agreement, American Summit implicitly elected to retain both the IFS shares and the Superior shares in complete satisfaction of the Founders Note.

Other evidence establishes American Summit manifested an intent to retain the Superior shares in complete satisfaction of the Founders Note. American Summit twice attempted to purchase the Superior shares by exercising the Founders and the DC Options. Three days before American Summit sold the IFS shares, American Summit attempted to exercise the Founders Option. Six days after the sale of the IFS shares, American Summit attempted to exercise the DC Option. American Summit attempted to pay for the shares under the DC Option by offsetting the outstanding amount on the Founders Note, exhausting the outstanding indebtedness. The exercise of the DC Option clearly evidences American Summit's intent to retain the collateral in satisfaction of the Founders Note. American Summit's rejection of the Beardmores' tender of the amount for the remaining indebtedness also evidences an intent to retain the Superior Shares in satisfaction of the debt, because American Summit acted as owner of the Superior shares.

Next, the Beardmores contend they retained ownership of the Superior shares. They did not. The Beardmores' attempted tender did not divest American Summit of its rights to the Superior shares. After American Summit sold the IFS shares, the Beardmores tried to tender the amount outstanding on the Founders Note. When a secured creditor (American Summit) elects to retain the collateral in full satisfaction

of the debt, the debtor (Beardmores) no longer has the right to redeem the collateral. Tex. Bus. & Comm. Code § 9.506.

The Beardmores assert Havins v. First Nat'l Bank of Paducah, 919 S.W.2d 177 (Tex. Ct. App. 1996), and United States v. Dawson, 929 F.2d 1336 (8th Cir. 1991), dictate the Beardmores retained ownership of the Superior shares. We disagree. In Havins, the secured creditor sought a judgment against the debtor for the amount of indebtedness. While the suit was pending, the secured creditor repossessed the debtor's farm equipment and cattle used as security. The secured creditor sold the cattle at an auction, but retained possession of the farm equipment. The trial court found the sale of the cattle was commercially reasonable, entered a deficiency judgment, and allowed the secured creditor to foreclose on realty securing the debt. The Texas Court of Appeals reversed and remanded for a new trial, holding the secured creditor failed to demonstrate it sold the cattle in a commercially reasonable manner. Havins, 919 S.W.2d at 184-85. While presented on appeal with the issue before us now, as noted above, the Texas Court of Appeals did not rule on the issue, declaring it waived. Id. at 184-85. The court only concluded the secured creditor could not foreclose on the realty until the secured creditor established it could pursue a deficiency judgment. Id. at 185.

Havins dealt with a different type of property—interests in real estate—while we determine American Summit's and the Beardmores' interests in personalty. See Brosseau v. Ranzau, 81 S.W.3d 381, 387 (Tex Ct. App. 2002). The Code's section 9.501(d) contemplates realty and personalty may be treated differently where a secured creditor first proceeds only against personalty. When a security agreement covers both personalty and realty, the secured creditor (1) may pursue his rights under the Code as to the personalty; or (2) may proceed against the personalty and realty in accordance with Texas real property law. Tex. Bus. & Comm. Code Ann. § 9.501(d). Because American Summit pursued its remedies under the Code, and did not proceed against both the realty and the personalty according to Texas real property law, our

question, whether American Summit retains ownership of the Superior shares, is governed by the Code, not Texas real property law.

In Dawson, the mortgagor, Dawson, granted a security interest in real estate to guarantee a loan to her brother. The brother's business assets also secured the loan. After default, the secured party sold the business assets at a public auction. The secured party did not provide Dawson with notice of the sale. After the sale of the business assets, the secured party assigned the note and its security interests to the Small Business Administration (SBA). The SBA attempted to foreclose on Dawson's real estate, which the district court granted. Dawson appealed. On appeal, our court held the SBA could not foreclose on Dawson's real estate because the secured creditor failed to notify Dawson about the sale of the business assets as required by the Arkansas Commercial Code. Dawson, 929 F.2d at 1341. We first noted, under Arkansas law—like Texas law—a creditor must comply with the Arkansas Commercial Code's notice requirement to obtain a deficiency judgment. Id. at 1339. We reasoned, because Dawson was only liable as a guarantor, she possessed an interest in maximizing the sale price of the business assets to minimize any deficiency. Id. at 1340. We further reasoned, this interest was not protected unless the secured creditor gave notice of the sale. Id.

Two facts distinguish this case from Dawson. First, because the Beardmores received notice of American Summit's sale of the IFS shares, they had the opportunity to maximize the proceeds of the sale of the IFS stock and to minimize any future deficiency. Second, like Havins, Dawson deals with a secured creditor's rights in realty while we are determining American Summit's interest in the Superior shares—personalty.

Although we conclude American Summit retained the Superior shares in satisfaction of the debt, we note the Beardmores are not without recourse against American Summit if the fair market value of the Superior shares exceeds the amount

outstanding. A debtor can recover any loss the debtor sustained due to the commercially unreasonable disposition of the debtor's collateral. Tex. Bus. & Comm. Code Ann. § 9.507(a); cf. ITT Commercial Fin. Corp. v. Riehn, 796 S.W.2d 248, 255 (Tex. Ct. App. 1990) (noting the debtor has a right to recover damages from a creditor for wrongful foreclosure if the debtor establishes the fair market value of the collateral at the time of repossession exceeded the amount of the remaining indebtedness).

### B. The Beardmores' Realty

American Summit seeks to foreclose its security interest in the Beardmores' realty. After disposing of personalty securing a debt, a secured creditor cannot foreclose a security interest in real estate to satisfy the same debt until the secured creditor demonstrates it can pursue a deficiency judgment. Havins, 919 S.W.2d at 180, 185. Contra Van Brunt, 804 S.W.2d at 130. We find Havins more persuasive than Van Brunt in our anticipation of Texas law. Because American Summit is precluded from seeking a deficiency judgment, American Summit cannot foreclose its security interest in the Beardmores' real estate.

### C. Standing to Challenge the Issuance of Certificates 43, 44, and 45

The district court determined American Summit did not have standing to challenge the issuance of Certificates 43, 44, and 45, because the district court concluded American Summit was not a shareholder or owner of the stock and American Summit improperly exercised the DC and Founders Options. Since we determine American Summit is the owner of the Superior shares, regardless of whether American Summit properly exercised the DC and Founders Options, we remand the unauthorized, illegal, and *ultra vires* issuance claim to the district court to reconsider American Summit's standing. If American Summit has standing, the district court shall consider the merits of American Summit's claim.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's summary judgment precluding American Summit from foreclosing on the Beardmores' real estate. We reverse the district court's entry of a deficiency judgment and the court's order vesting ownership of Certificate 33 with the Beardmores. We remand the case to the district court for entry of an order vesting the ownership of the shares evidenced by Certificate 33 in American Summit, with no deficiency. We also remand for the district court to reconsider American Summit's standing to assert the unauthorized, illegal and *ultra vires* issuance claim of Certificates 43, 44, and 45, and, if American Summit has standing, to consider the merits of American Summit's claim.

_____